**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724 16-MD-2724 |
| THIS DOCUMENT RELATES TO: *HUMANA INC.*,          *PLAINTIFF*,     *v.* *ACTAVIS ELIZABETH, LLC, ET AL.*,          *DEFENDANTS.* | Case No. 2:18-cv-03299-CMR HON. CYNTHIA M. RUFE |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO STRIKE PORTIONS OF THE REBUTTAL REPORTS OF W. DAVID**
**BRADFORD, WILLIAM VOGT, AND RICHARD FRANK OR, IN THE ALTERNATIVE,**
**FOR LEAVE TO FILE LIMITED REPLY EXPERT REPORTS IN RESPONSE**

FILED WITH REDACTIONS - PUBLIC VERSION

**TABLE OF CONTENTS**

**Page**

INTRODUCTION.................................................................................................................. 1

BACKGROUND.................................................................................................................... 3

LEGAL STANDARDS ......................................................................................................... 8

ARGUMENT......................................................................................................................... 9

    I.     The Court Should Strike the New Opinions in Humana Rebuttal Experts'
         Reports.................................................................................................................. 9

    II.    Alternatively, Defendants Request an Opportunity to Respond to the New
         Analyses............................................................................................................ 12

CONCLUSION ................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bradley v. Amazon.com, Inc.*,
    2023 WL 2574572 (E.D. Pa. Mar. 17, 2023) ............................................................... 11

*Brooks v. Trans Union LLC*,
    2025 WL 3461543 (E.D. Pa. Dec. 2, 2025)..................................................... 9, 12, 13, 14

*Emerick v. U.S. Suzuki Motor Corp.*,
    750 F.2d 19 (3d Cir. 1984)......................................................................................... 8

*Fed. Trade Comm'n v. Innovative Designs, Inc.*,
    2018 WL 3611510 (W.D. Pa. July 27, 2018)...................................................... 9, 13, 15

*Fulton Fin. Advisors v. Natcity Invs., Inc.*,
    2016 WL 5461897 (E.D. Pa. Sept. 28, 2016)................................................................ 8

*Holbrook v. Woodham*,
    2008 WL 544719 (W.D. Pa. Feb. 28, 2008)...................................................... 9, 13, 14

*In re Asbestos Prods. Liab. Litig.*,
    2012 WL 661673 (E.D. Pa. Feb. 8, 2012),
    *report and recommendation adopted*,
    2012 WL 661660 (E.D. Pa. Feb. 29, 2012)............................................................ 11, 12

*In re Generic Pharms. Pricing Antitrust Litig.*,
    2024 WL 4980784 (E.D. Pa. Dec. 3, 2024)................................................................... 7

*In re Generic Pharms. Pricing Antitrust Litig.*,
    ECF No. 3110 (Daubert Hr'g, Day 1, Sept. 24, 2024)..................................................... 7

*In re Lower Lake Erie Iron Ore Antitrust Litig.*,
    998 F.2d 1144 (3d Cir. 1993)................................................................................... 11

*In re Namenda Indirect Purchaser Antitrust Litig.*,
    2022 WL 3362429 (S.D.N.Y. Aug. 15, 2022)................................................................ 7

*Konstantopoulos v. Westvaco Corp.*,
    112 F.3d 710 (3d Cir. 1997)....................................................................................... 9

*Lavell v. Camden Cnty. Coll.*,
    2023 WL 4074077 (D.N.J. June 20, 2023)......................................................... 8, 9, 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ................................................................................................ 11

*TQ Delta, LLC v. 2Wire, Inc.*,
  2021 WL 3525234 (D. Del. Aug. 11, 2021) ......................................................... 9

*Vay v. Huston*,
  725 F. App'x 112 (3d Cir. 2018) .......................................................................... 8

*ZF Meritor, LLC v. Eaton Corp.*,
  696 F.3d 254 (3d Cir. 2012) ............................................................................ 9, 14

**RULES**

Fed. R. Civ. P. 26 ................................................................................................... 14

Fed. R. Civ. P. 26(a)(2)(D)(ii) ............................................................................ 1, 8

Fed. R. Civ. P. 37(c)(1) .......................................................................................... 8

iii

On February 27, 2026, Humana's experts Drs. W. David Bradford, William B. Vogt, and Richard G. Frank (collectively, the "Humana Rebuttal Experts") served reports in response to reports filed by Defendants' experts Drs. Pierre-Yves Crémieux and Amitabh Chandra on January 9, 2026. While Dr. Frank was only offered as a purported rebuttal expert, Drs. Bradford and Vogt submitted opening reports in November 2025. However, in each instance, Humana's experts offer new opinions under the guise of rebuttal testimony.

Defendants respectfully request that the Court strike the new opinions, or, in the alternative, grant Defendants leave to file limited supplemental expert reports from Crémieux in response to Bradford, and from Chandra in response to Vogt and Frank. In light of the *Humana I* case schedule, Defendants seek an expedited briefing schedule on this motion and request that Humana file its opposition by March 30, 2026, with Defendants to file their reply by April 3, 2026.

**<u>INTRODUCTION</u>**

While the Humana Rebuttal Experts claim to respond to Defendants' experts, their opinions go well beyond "evidence . . . intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P 26(a)(2)(D)(ii). Bradford's report discloses several new opinions that go to the heart of this case, including his belated first attempt to distinguish between ████████████████. This is an affirmative opinion, not proper rebuttal, and should have been part of his opening report. Moreover, several of Bradford's new opinions directly contradict his prior report and his deposition testimony. Vogt's report introduces new ████████████████████████████████████, including offsets based on Humana materials produced *after* Defendants' January 9 reports, and an alternative ████████████ model. And Frank's report advances entirely new positions related to the substantial payments Humana received from the federal government via Medicare Part D. While Humana was amenable to a

1

Chandra supplemental report responding to some—but not all—of the new Vogt and Frank analyses relying on Humana's belatedly produced data, Humana emphasized that it would only agree to a "limited" report. Bank Decl. ¶ 10.[1]  Indeed, Humana would not even agree that Chandra could respond to all the new Vogt and Frank opinions based on the new data—much less the rest of the new opinions in these two "rebuttal" reports. *Id*.  Humana would not agree to *any* supplemental report from Cremieux. *Id.*

Courts in this Circuit have precluded expert testimony that functions as a do-over of a plaintiff's case-in-chief, and this Court should do the same by striking the new opinions.  In the alternative, Defendants request that the Court grant them leave to file the proposed limited supplemental expert reports.  If the expert reports are not stricken, the targeted sur-rebuttals from Crémieux in response to Bradford and from Chandra in response to Vogt and Frank, confined to these new topics and analyses, are necessary to prevent prejudice and will not disrupt the schedule.

The Third Circuit's *Pennypack* factors apply to both the motions to strike and for leave, and counsel balancing the importance of evidence against the potential prejudice to the opposing party, among other considerations.  At the outset, Defendants are prejudiced by Bradford's attempt to rewrite his opinions on the central inquiries in this matter at the close of expert discovery.  And Defendants are further prejudiced on damages opinions by facing new analyses (from Vogt), new opinions about Medicare Part D (from Frank), and studies of Humana's newly produced data (from both).  This prejudice can only be cured by striking the new opinions or, in the alternative, by

---

[1] Given the upcoming summary judgment deadline, Defendants intend to file the proposed supplemental Chandra report as an attachment to their motion for summary judgment filings on Thursday, March 26, 2026.  However, the only portions of that report that will be visible are those which Humana was amenable to Chandra supplementing. The remaining portions of the proposed report, which Humana disputes and thus are at issue in this motion, will be redacted prior to filing.  If permitted, Defendants can be ready to serve that report to Humana in its entirety immediately following an order granting Defendants' alternative relief sought in this motion.  As to the requested supplemental Cremieux report, Defendants can be ready to serve that within two days of such an order.  If the Court would prefer to consider either proposed report in conjunction with this motion, Defendants are prepared to submit them for the Court's review.

granting Defendants leave to file limited supplemental expert reports in response. If permitted, Defendants' reports would address important issues including, among others, whether the challenged price increases can be explained by conscious parallelism and the extent of any claimed damages by Humana. As trial in this matter is still months away, Humana will not suffer prejudice from two concise supplemental reports. On the contrary, if the new opinions from Humana remain in the case without an opportunity for Defendants to respond, Defendants will suffer prejudice from the unbalanced presentation of the issues. The Court should therefore grant Defendants' motion to strike, or in the alternative, for leave to file supplemental reports.

## BACKGROUND

On November 7, 2025, consistent with this Court's pretrial order, Humana disclosed the expert reports of Bradford (*Bradford I*)[2] and Vogt (*Vogt I*). *See* Pretrial Order No. 329, Dkt. 4079. Following the depositions of Bradford and Vogt in December 2025, Defendants served the expert reports of Crémieux and Chandra, among others, on January 9, 2026.

On February 26, 2026, seven weeks after Defendants' experts served their reports, after all depositions of Defendants' experts, five months after the close of fact discovery, and only *one day* before Humana's rebuttal reports were due, Humana produced extensive materials relating to payments it received from the federal government under Medicare Part D and from pharmacies, including Direct and Indirect Remuneration ("DIR") amounts and Payment Reconciliation Summary ("PRS") reports submitted to the Centers for Medicare & Medicare Services ("CMS"). The material covered years of data, from 2010-2018, and Defendants had been requesting the

---

[2] Humana also served a "corrected" report of Bradford on December 10, 2025, adding numerous record citations and assertions that he could have included in his opening report but failed to do so. Citations to *Bradford I* are to the December 10 "corrected" report. This new rebuttal report therefore represents his *third* bite at the apple.

3

material via discovery requests, negotiations, and a motion to compel spanning over five months.[3]

Bradford and Vogt then served "rebuttal" reports on February 27, 2026 (respectively, *Bradford II* and *Vogt II*). Frank, a new expert for Humana, also served a rebuttal report (*Frank*) on the same day. All three reports include new opinions and analyses that go well beyond the scope of Crémieux's and Chandra's respective reports.

While *Bradford II* purports to respond to Defendants' reports, it disclosed several new opinions and methodologies, several of which *contradict* his opening report and/or deposition testimony, including the following:

- **Sustainability of Tacit Collusion**: In his opening report, Bradford observed that ████████ ████████████████████████████████████████████████████████████ of the Subject Drugs, *Bradford I* ¶ 76, and found that nearly all of the markets were ████████ ████████ with Defendants ████████████████████████████████ ████████ *Id.* ¶ 78, Table 4. Accordingly, he opined that ████████████████ ████████████████████████████████ *id.* ¶ 79, but, critically, he testified that he was not distinguishing between ████████████████████████████████████. *See, e.g.,* Bradford Tr. 25:24-26:1 ████████████████████████████████████████████ ████████████████████████████████████████████████████████ *id.* 26:22-24 ████████████████████████████████████████████████ ████████████████████████████ In fact, the word "tacit" does not appear in *Bradford I*.

  Now, for the first time, Bradford attempts to distinguish between ████████████████ by asserting ████████████████████████████████████ ████████████████████████████████████████████████████████ ████████ *Bradford II* ¶ 17. He concludes that ████████████████████████

---

[3] In addition to earlier discovery requests concerning Humana's claims, Defendants served discovery requests specifically seeking such materials on September 1, 2025. After Humana refused to produce the materials and meet and confers failed to resolve the issue, Defendants submitted a motion to compel to Special Master Stengel on November 21, 2025. The parties continued to discuss potential resolutions throughout the process with Special Master Stengel, and eventually, Humana agreed to produce voluminous data and materials concerning certain government payments and pharmacy fees paid to Humana. *See* Bank Decl. ¶¶ 2-4. Throughout the negotiations and subsequent briefing related to these requests, Defendants frequently reminded Humana of the approaching expert deadlines and repeatedly reserved rights to supplement their reports should materials be produced after Defendants' expert deadlines. *See, e.g.*, MDL 02724, ECF 3857-2 ("Should materials be produced after Defendants' expert deadlines, Defendants reserve the right to supplement their reports."). Humana has also agreed to produce materials from another proceeding in which it accused ████████ of fraud and overcharging it on generic drugs, resulting in an arbitration ruling in Humana's favor and a monetary settlement between the parties. Humana has not yet produced the material because it says it is working through protective order issues. Defendants have reserved and continue to reserve their rights to supplement their expert reports, motions for summary judgment, and *Daubert* motions based on these materials once Humana produces them.

███████████████████████████████████████████ *id*. ¶ 17, and relies on economic literature not cited or referenced in *Bradford I*.  *Id*. ¶¶ 18-19.

Bradford also conducts a new related analysis.  Despite previously finding there were only a ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████ than he originally claimed.  *Id*. ¶¶ 20-25, Table 1.

- **Magnitude of Increases**: Bradford now newly claims that ██████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████ *Bradford II* ¶¶ 16, 26.  In support, Bradford now cites an unpublished paper regarding an alleged cartel among Chilean pharmacies.  *Id*.  Not only was the *Bradford I* report silent on this subject, Bradford testified that ruling out ██████████████████ was not ██████████ for his opinion.  Bradford Tr. 274:10-16.  In an abrupt turnaround, he now claims it is relevant.

- **"Tacit" Phase of Conspiracy**: Bradford provides a novel opinion that ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ █████████████████ *Bradford II* ¶ 37.  He then speculates that ████████████ █████████████████████████ but provides no evidentiary support for it.  *Id*. ¶ 38.  Bradford included none of these opinions or cited literature in *Bradford I*.  In fact, he testified that he was focused in his opening report on the ████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████ *See* Bradford Tr. 165:15-23.  Instead, he was simply instructed by counsel to █████████████████████████.  *See id*. 165:8-19.

- **Scope of the Alleged Overarching Conspiracy**: Acknowledging that he has ████████ ██████████ found in *Bradford I*, Bradford now calculates, ██████████████████ ████████████████████████████████████████████████████████████████ █████████████ *Bradford II* ¶ 30.  As part of this new analysis, he proffers a new Table 2 and opines that ███████████████████████████████████████████████████ ███████████ *id*. ¶ 31.  He concludes that combined with the limited deferred prosecution agreements, he views █████████████████████████████████████████████████████ █████████████████████████████████████████████████████ *id*. ¶ 33.  Before this opinion, Bradford testified that he only considered the ████████████████ █████████████ Bradford Tr. 442:5-24, 436:6-24.

*Vogt II* includes entirely new calculations and analysis, many of which Vogt claims he offers for purposes of "robustness," including:

- **Medicare Part D Adjustments Based on Newly-Produced DIR/PRS Data**: Following counsel's instructions, ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████ *Vogt II* ¶¶ 163-166; Table 13; Appendix 6.5 Tables

5

35-37.  In the parties' pre-filing negotiations, Humana would only entertain a response from Chandra to a portion of this new material (*Vogt II* ¶¶ 164-165, Table 13).

- **Different Control Groups (and Different Use of Control Groups) for Regression Analyses**: Vogt alters his ███████████████████ analysis in multiple ways.  In his opening report, Vogt used a ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████. Defendants' expert raised numerous issues with his flawed analysis.  Now, Vogt seeks to replace that ████████ ███████████████ And he also seeks to use █████████████████████████. *See, e.g.*, *Vogt II* ¶¶ 99, 107; Tables 7, 8; Appendix 6.3.2 Tables 24, 27.  In sum, he seeks to change both the drugs *and* the prices he uses—two fundamental changes.  While he claims these different models yield results ███████████████████████████ of his original models, *id.* ¶ 101, this methodology is entirely new and subject to additional critiques.

- **Time-Trend Augmentation**:  Vogt also creates two brand new models called ██████████ ███████████████████████ *Vogt II* ¶¶ 107-109; Table 8; Appendix 6.3.2 Tables 25, 28.  These are not mere tweaks, but materially alter his model from *Vogt I*.

- **IQVIA vs. Humana Price Comparisons**: Vogt adds ████████████████████████████ ██████████████████████████████████ to defend his reliance on ██████ and also presents a new ████████████████████████████ ███████████████ *Vogt II* ¶¶ 118, 120; Figures 1-4; Appendix 6.4 Table 34.  Neither the comparisons nor the new model were disclosed in *Vogt I*.  Moreover, the new model is a ███████████████████, unlike the █████████████████████ models from *Vogt I*.  Vogt is not only using different data, but also an entirely different type of regression.

- **New Pass-Through Analyses "Supporting" 100% Pass-On Elasticity Assumption**: In his opening report, Vogt assumed ██████████████████████ with no empirical analysis.  He now seeks to correct that fatal flaw by providing entirely new regressions that could have been included earlier but were not.  *Vogt II*, ¶¶ 158-161; Figures 5-10.

*Frank* introduces new opinions related to Medicare Part D and other data-dependent issues,

including:

- **Reliance on Recently Produced Data**: Frank cites █████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████ *Frank* ¶ 32 & fn. 44; ¶ 40 & fn. 53; *see also* ¶ 52. Humana had these files at the time its experts submitted their opening reports and could have analyzed them then. Instead, they waited to produce them until after Defendants' experts served their reports and were deposed.  Humana was amenable to Chandra responding to this new material.  Bank Decl. ¶ 10.

- **Pharmacy Price Concessions**: Frank relies on Humana's newly produced DIR data to opine that ████████████████████████████████████████████████████████████████

6

███████████████████████████████████ *Frank* ¶ 52; fn. 53 referenced at ¶ 40.  As noted above, Humana was amenable to Chandra responding to this new material.

- **New Theories About Payments by the Federal Government to Humana**: It is undisputed that ████████████████████████████████████ ████████████████ Stein 30(b)(6) Tr.  291:1-293:8; 294:3-295:17; 250:24-251:4. Rather, the Federal Government bore ████████████████████████ ████████████████████████████████████████ ████████████████████████████████████. *Id.*; *see also, e.g.*, Frank Tr. (Rough) 187:8-15; 224:13-15. Frank presents a flawed and legally unsound opinion that all those ████████████████████████████████ ████ *Frank* ¶¶ 23, 30-31, 38-39, 54.  Frank admitted during his deposition that this ████ ████████████████████████████████████████ ████████████████████████████ Frank Tr. (Rough) 153:23-155:15.  Yet the law, including as noted previously by this Court, holds otherwise. *In re Generic Pharms. Pricing Antitrust Litig.*, 2024 WL 4980784, at *12 (E.D. Pa. Dec. 3, 2024) (recognizing that, on the question of antitrust <u>damages</u>, defendants are free to argue that "[a plaintiff's] experts should offset their damages where pass-through occurs."); *In re Generic Pharms. Pricing Antitrust Litig.*, ECF No. 3110 at 240:24-241:3 (Daubert Hr'g, Day 1, Sept. 24, 2024) (court "agree[ing]" that post-sale adjustments are relevant to damages); *In re Namenda Indirect Purchaser Antitrust Litig.*, 2022 WL 3362429, *11 (S.D.N.Y. Aug. 15, 2022) ("This is not even a close question – subsidies, of all forms, are a damages set off."). Frank also improperly analogizes ████████████ ████████████████████████████████████. *Frank* ¶¶ 24, 30, 54.  Additionally, he uses the newly produced data to support some of his opinions. *Frank* ¶¶ 31–32, 39-41, 50, 54.  Although Humana knew about this government payments issue and could have served these opinions in their opening reports, they chose to wait until now to sandbag Defendants with a new expert and new opinions.

- **Application of "Collateral Source" Rule**: Frank emphasizes that ████████████ ████████████████████████████████████████ ████████████████████████████████████ calculating Humana's damages.  *Frank* ¶¶ 26, 30-31, 38-39, 50, 54.  This introduces a new legal concept, and was not part of Humana's initial expert presentations.

- **New Opinions Regarding Bid Mechanics**: Frank offers a new analysis, ostensibly to rebut Chandra's opinion that ████████████████████████████████████ ████████████████████████████████████████ Frank also points to ████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ *Frank* ¶¶ 53-55; *see also* Frank Tr. (Rough) 124:23-127:2.  All of this could and should have been in Humana's opening reports.  Defendants' experts could not have addressed these opinions.

Following submission of these reports, and a few days after receiving Humana's backup data productions for its rebuttal experts, Defendants attempted to secure Humana's consent to

7

submit limited supplemental reports responding to the above material in the February 27 reports. Bank Decl. ¶¶ 5-6. The parties met and conferred on March 9, and on March 10, Defendants identified specific paragraphs and tables they challenge. *Id.* ¶¶ 6-7. Six days later, Humana responded that it would entertain a limited Chandra supplement narrowly confined to *certain* issues it deemed related to the newly produced data on which Vogt and Frank relied.[4] Humana opposed leave as to any other subject, as well as the prospect of a rebuttal report from Crémieux. *Id.* ¶ 10.

### LEGAL STANDARDS

Expert rebuttal reports are improper if they expand beyond evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party ...." Fed. R. Civ. P. 26(a)(2)(D)(ii). "It is well settled that evidence which properly belongs in the case-in-chief but is first introduced in rebuttal may be rejected so as to avoid prejudice to the defendant and to ensure the orderly presentation of proof." *Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984); *Vay v. Huston*, 725 F. App'x 112, 117 (3d Cir. 2018) (same). A rebuttal report is improper if it "amount[s] to an improper 'do-over' of the original analysis." *Lavell v. Camden Cnty. Coll.*, 2023 WL 4074077, at *5 (D.N.J. June 20, 2023). Furthermore, rebuttal is improper where "it contains new opinions or information which is contradictory to that set forth in the first expert's first report." *Fulton Fin. Advisors v. Natcity Invs., Inc.*, 2016 WL 5461897, at *2 (E.D. Pa. Sept. 28, 2016).

The Court may strike an improper rebuttal expert report pursuant to Fed. R. Civ. P. 37(c)(1), upon consideration of the Third Circuit's *Pennypack* factors: "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the

---

[4] *See supra* n.1; Bank Decl. ¶¶ 7-10.

orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation." *Lavell*, 2023 WL 4074077, at *5 & n.4; *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710 (3d Cir. 1997). The Court must also evaluate the "importance of the evidence," which is "the most significant" consideration. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012).

"The decision of whether to allow a party to present evidence in . . . sur-rebuttal beyond the initial rebuttal report is committed to the trial court's discretion." *Brooks v. Trans Union LLC*, 2025 WL 3461543, at *7 (E.D. Pa. Dec. 2, 2025). Sur-rebuttals are permissible when the "rebuttal introduces subject matter not previously raised in its case-in-chief." *Id.* (citation omitted).

This Court and others in this Circuit have turned to the Third Circuit's *Pennypack* factors to evaluate whether to admit a sur-rebuttal report. *Id.* ("Given the *Pennypack* factors, permitting Plaintiff to file a sur-rebuttal report is supported"); *TQ Delta, LLC v. 2Wire, Inc.*, 2021 WL 3525234, at *2 (D. Del. Aug. 11, 2021) (discussing *Pennypack* factors to admit "surreply expert report" disclosed "without asking for leave of the Court, as required"); *Fed. Trade Comm'n v. Innovative Designs, Inc.*, 2018 WL 3611510, at *4 (W.D. Pa. July 27, 2018) (similar); *Holbrook v. Woodham*, 2008 WL 544719, at *3 (W.D. Pa. Feb. 28, 2008) (similar).

## **ARGUMENT**

### I.    The Court Should Strike the New Opinions in Humana Rebuttal Experts' Reports

The *Bradford II*, *Vogt II*, and *Frank* reports contain new analyses and opinions not previously introduced in this case—even directly contradicting the experts' own deposition testimony about their opinions at times—and accordingly, they must be stricken as improper.

***The Humana Rebuttal Experts all introduced new opinions***. Bradford improperly introduced new methods in his purported rebuttal opinion. Most importantly, he addresses ▮▮▮ ▮▮▮▮ for the first time. *See supra* at 4-5. In doing so, he contradicts his opinion in *Bradford*

9

*I.* For example, Bradford presents a new opinion that ███████████████████████████ ████████████████████ He concludes that ██████████████████████████████████ ██████████████████████ *Bradford II* ¶ 24, Table 1.  He further opines that as a result, ███ ███████████████████████████████████████████████████████████████████████ ████████ *Bradford II* ¶ 25.  This is not only a new analysis, but contradicts his prior report where he stated, █████████████████████████████████████████████████████ a factor he said supported the inference of collusion because ██████████████████████ ███████████████████████ *Bradford I* ¶¶ 76, 79.  The Court should strike this about-face in Bradford's analysis of the significance of the ███████████████████████.  As another example, Bradford now claims the economic literature supports the existence of a "tacit" phase of a conspiracy and that ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████

*Bradford II* ¶ 37.  Bradford's prior report made no mention of even the word "tacit," let alone offer any suggestion that Bradford would opine about a "tacit" phase of a conspiracy.  Bradford should be precluded from testifying to these and his other new opinions that operate as an improper "do-over" of his opinions on tacit collusion.  *Lavell*, 2023 WL 4074077, at *5; *see supra* at 4-5.

Vogt offers multiple new regression models and new data inputs *for* those models.  For example, his new models (1) ██████████████████████████████████████████, (2) ████ █████████████████████████████ (3) ██████████████████████████████████████ ████████████████, (4) ██████████████████████████████████████████████ ███████████████████████████████████████████████████, and (5) ███████████ ████████████████████████████████████████████████████. *See*

*supra* at 5-6.  Vogt also offers opinions based on Humana's Medicare Part D data that Humana produced after Defendants' experts wrote their reports.  *See supra* at 5-6.

Frank similarly advances new Medicare Part D opinions, in part based on Humana's newly produced data.  His new opinions go to ███████████████████████████████████ ███████████████████████████████████ .  *See supra* at 6-7.  These positions likewise could not have been addressed by Chandra in his report and therefore should be struck to avoid a one-sided record on Medicare adjustments.

***The new opinions should be stricken.***  These new opinions are improper because they introduce new theories to Humana's case-in-chief under the guise of rebuttal: Bradford's opinions to meet Humana's burden to "exclude the possibility that [Defendants] acted independently," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 588 (1986), and Vogt and Frank to meet Humana's burden to show non-speculative overcharge and damages "caused by [Defendants'] participation in" the alleged conspiracy, *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1176 (3d Cir. 1993).  This Court has excluded such opinions that present "new arguments for which the plaintiff has the burden." *In re Asbestos Prods. Liab. Litig.*, 2012 WL 661673, at *3 (E.D. Pa. Feb. 8, 2012), *report and recommendation adopted*, 2012 WL 661660 (E.D. Pa. Feb. 29, 2012).  For example, in *Bradley v. Amazon.com, Inc.*, the plaintiff's reply report contained new theories of causation and defect. 2023 WL 2574572, at *13 (E.D. Pa. Mar. 17, 2023). The court concluded the plaintiffs "offer[ed] 'new opinions or information' that [were] sometimes 'contradictory to their initial disclosures,'" even though some of those opinions were framed "to refute the methodologies and conclusions in [defendant's expert's] report." *Id.* at *13-14 (citation omitted).  This Court then excluded the opinions, in part because the parties were already in "the process of preparing *Daubert* motions and motions for summary judgment. *Id.* at

11

*14. The Humana Rebuttal Experts have disclosed new opinions on core elements of Humana's case at the close of expert discovery and should therefore also be excluded.

The *Pennypack* factors support striking the new opinions. First, Defendants have not had any opportunity to respond to or test these novel analyses in advance of summary judgment briefing and thus face significant prejudice. *See Asbestos*, 2012 WL 661673, at *4 (striking plaintiff's expert report because it would "damage the Defendant's ability to respond to this expert and slow the orderly administration of justice"). Second, there is no prejudice to Humana, which has had nearly eight years to develop its case; it is a waste of this Court's and Defendants' time for Humana to offer new materials that should have been in its initial reports. *See id.* at *3. Third, it would not disrupt trial to strike Humana's reports; it can rely on its opening and the remainder of its rebuttal reports. Fourth, Humana's DIR and PRS discovery delays, coupled with its decision to withhold opinions and analyses until now, weighs in favor of striking. Accordingly, the Court should strike this new expert testimony.

## II.    Alternatively, Defendants Request an Opportunity to Respond to the New Analyses

In the alternative, the *Pennypack* factors support the Defendants' proposal to file two limited supplemental reports in response to the February 27 reports of Bradford, Vogt, and Frank. Indeed, it is Defendants who would be prejudiced if their motion to strike is denied *and* they do not have an opportunity to respond to the new opinions and analyses in those reports.

In *Brooks*, the defendants used "new methods in an effort to rebut" the plaintiff's report. 2025 WL 3461543, at *5. The plaintiff requested leave to file a response and the court held that "the *Pennypack* factors . . . supported" the request. *Id.* The court found there was "limited" prejudice due to "awareness" of the issues underlying the reports, the sur-rebuttal could be challenged "through cross-examination," it did not "disrupt the orderly and efficient trial of the case," there was an absence of "bad faith," and the issues were "importan[t]." *Id.* at *7. Another

12

court held that even where the issues in the supplemental expert report were (unlike here) "not of great importance," the absence of bad faith or prejudice—like that caused by the "introduction of a new witness shortly before or even during trial"—was sufficient to admit a sur-rebuttal report. *Holbrook*, 2008 WL 544719, at \*2-3.  Because the *Pennypack* factors weigh even more strongly in favor of supplemental reports here, Defendants should be granted leave to file them.  The fact that the Humana Rebuttal Experts use genuinely "new" methods, often relying on newly produced data, also weighs in favor of allowing supplementing.  *See Brooks*, 2025 WL 3461543, at \*5, \*7.

> ***Prejudice would only be suffered by Defendants if leave is denied.*** Humana would not be prejudiced by limited supplemental reports from Drs. Crémieux and Chandra.  The *Pennypack* factors look for the type of prejudice caused by "the introduction of a new witness shortly before or even during trial," or "interference with . . . trial preparation." *Holbrook*, 2008 WL 544719, at \*2.  Trial is scheduled to begin on September 15, 2026.  Humana will have over five months to consider the limited supplemental reports before trial commences in this matter.  That is more than enough time to ensure that the supplemental reports do not interfere with Humana's trial preparation.  *See Fed. Trade Comm'n v. Innovative Designs, Inc.*, 2018 WL 3611510, at \*5 (W.D. Pa. July 27, 2018) (admitting report in part because "all of the experts' opinions will ultimately be subject to cross examination at trial, which is not set to begin until [less than six months later]").

> Beyond the timing of the proposed supplement, the substance is also non-prejudicial. Courts in this Circuit have admitted supplemental reports when "the subjects to be covered by the proposed sur-rebuttal report are not new subjects in this case and have existed from the inception of this case." *Innovative Designs*, 2018 WL 3611510, at \*5.  That is certainly the case here, where the new opinions of the Humana Rebuttal Experts and the two proposed supplements in response

13

relate, at a high level, to (i) whether the challenged price increases are better explained by conspiracy or by independent conduct; and (ii) the extent of any damages suffered by Humana.

In contrast, if Crémieux and Chandra are **not** permitted to respond to the new opinions of the Humana Rebuttal Experts, Humana will likely argue that any attempt to rebut those opinions at trial with a reasoned analysis may contravene Rule 26's disclosure requirements. This would risk an unfair trial where Bradford could opine, for example, that ██████████████ ██████████ *Bradford II* ¶ 17, and Vogt and Frank could opine that ██████████████ ███████████, but neither Crémieux nor Chandra would have the ability to meaningfully respond.

***Ability to cure prejudice.*** Even if Humana suffered some modicum of prejudice from Defendants' proposed supplemental reports, and there is none, it could address this "through cross-examination" of Crémieux and Chandra at trial. *Brooks*, 2025 WL 3461543, at *7.

***Trial disruption.*** The proposed supplemental reports will not "disrupt the orderly and efficient trial of the case." *Brooks*, 2025 WL 3461543, at *7. As discussed *supra* at 13-14, there is no need to adjust the trial schedule to admit the limited supplemental reports.

***Bad faith.*** "[T]he Third Circuit requires an egregious showing of bad faith" to refuse a supplemental expert report on this basis. *Holbrook*, 2008 WL 544719, at *3. No bad faith is present here: Defendants met and conferred in good faith with Humana and are now respectfully seeking leave of Court given the parties' impasse.

***Importance of the evidence.*** The "most significant" consideration strongly favors permitting Defendants' supplemental expert reports. *ZF Meritor*, 696 F.3d at 298. Bradford's new opinions go to the core of the case: ██████████████████████ ████████████████████ *Bradford II* ¶¶ 17-19, 20-25, Table 1; the possibility that the ████ ███████████████████████████████████, *id.* ¶¶ 16, 26; whether the alleged conspiracy

14

███████████████████████████████████, *id.* ¶¶ 37-38; and the significance of ████

██████████████████████████████ *id.* ¶¶ 30-31, 33, Table 2. *See supra* at 4-5.

As a result, it is critical to permit Crémieux to file a supplemental opinion "to give both parties a full opportunity to present their cases." *Innovative Designs*, 2018 WL 3611510, at *5.

The importance of allowing a complete expert record on Medicare adjustments, when nearly ████ of Humana's claims at issue were Medicare Part D claims, *Chandra* ¶ 77, also weighs heavily in favor of leave. Both Vogt and Frank offer opinions based on the newly produced data, to which Defendants' experts have had no opportunity to respond. Vogt also offers multiple new and fundamentally different regression analyses—including based on new methodologies and new data inputs—to both calculate alleged overcharges and attempt to quantify pass-through. Denying Chandra a response would result in an incomplete and unfair presentation of damages at trial.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court grant Defendants' Motion to Strike the new opinions of Drs. Bradford, Vogt, and Frank discussed herein:

| Report | Portions Covered by Defendants' Motion to Strike |
|---|---|
| Rebuttal Report of W. David Bradford, Ph.D. | ¶¶ 17-19; ¶¶ 20-25, Table 1; ¶¶ 16, 26; ¶¶ 37-38; and ¶¶ 30-31, 33, Table 2 |
| Rebuttal Report of William B. Vogt, Ph.D. | ¶¶ 99, 107-109, 118, 120, 158-161, 163, 166; Tables 7, 8; Figures 1-10; Appendix 6.3.2 Tables 24, 25, 27, 28; Appendix 6.4 Table 34; Appendix 6.5 Tables 35, 36, 37[5] |
| Report of Richard D. Frank, Ph.D. | ¶¶ 23-24, 26, 30-32, 38-41, 50, 53-55[6] |

In the alternative, Defendants respectfully request leave to file the supplemental reports of Drs. Pierre Cremieux and Amitabh Chandra in response to these new opinions.

---

[5] While Paragraphs 164-165 and Table 13 of Vogt's report also contain new opinions, Humana was amenable to Chandra responding to these.

[6] While Paragraph 52 of Frank's report also contains new opinions, Humana was amenable to Chandra responding to this. Humana was also amenable to Chandra responding to footnotes of paragraphs 32 and 53, but not the entirety of those paragraphs. *See* Bank Decl. ¶ 10. Thus, Defendants include these paragraphs in the referenced ranges.

Dated:  March 23, 2026

Respectfully submitted,

*/s/ Jeffrey C. Bank*
Jeffrey C. Bank
Seth C. Silber
WILSON SONSINI GOODRICH &
ROSATI
1700 K Street, NW, 5th Floor
Washington, D.C. 20006
Telephone: (202) 973-8800
Facsimile: (866) 974-7329
jbank@wsgr.com
ssilber@wsgr.com


Chul Pak
Michael Sommer
WILSON SONSINI GOODRICH &
ROSATI
31 West 52nd Street, Fifth Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
cpak@wsgr.com
msommer@wsgr.com

*Counsel for the Mylan Defendants*

*/s/ Seth Davis*
Seth Davis
Sheron Korpus
Seth A. Moskowitz
David M. Max
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
skorpus@kasowitz.com
smoskowitz@kasowitz.com
sdavis@kasowitz.com
dmax@kasowitz.com

*Counsel for Defendants Actavis Elizabeth
LLC, Actavis Holdco U.S., Inc., Actavis
Pharma, Inc., and Teva Pharmaceuticals
USA, Inc.*

*/s/ Mary Pat Brogan*
Mary Pat Brogan
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone: 216.621.0200
mbrogan@bakerlaw.com

Carlos F. Ortiz
Kayley B. Sullivan
BAKER & HOSTETLER LLP
45 Rockefeller Center
New York, NY 10111-0100
Telephone: 212.589.4200
cortiz@bakerlaw.com
kbsullivan@bakerlaw.com

*Counsel for Defendant Heritage
Pharmaceuticals, Inc.*

/s/ Donald W. Hawthorne
Donald W. Hawthorne
CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP
101 Park Avenue
New York, NY 10178
Telephone: 212-696-6949
dhawthorne@curtis.com

*Counsel for Defendant Breckenridge
Pharmaceutical, Inc.*

/s/ David Fioccola
Grant Esposito
David Fioccola
PROSKAUER ROSE LLP
Eleven Times Square New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
gesposito@proskauer.com
dfioccola@proskauer.com

Christopher Ondeck
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., NW
Suite 600 South
Washington, DC 20004
Telephone: (202) 416-5865
Facsimile: (202) 416-6899
ondeck@proskauer.com

*Counsel for Defendants Sandoz Inc. and
Fougera Pharmaceuticals Inc.*

/s/ John M. Taladay
John M. Taladay
Christopher P. Wilson
Edward W. Duffy
JoAnna B. Adkisson
Michael A. Munoz
BAKER BOTTS LLP
700 K Street NW
Washington, DC 20001
Telephone: (202) 639-7700

/s/ Brian T. Feeney
Brian T. Feeney
GREENBERG TRAURIG, LLP
1717 Arch Street, Suite 400
Philadelphia, PA 19103
Telephone: (215) 988-7812
Facsimile: (215) 717-5265
Brian.feeney@gtlaw.com

*Counsel for Defendant Dr. Reddy's
Laboratories, Inc.*

/s/ Robert W. Manoso
Robert W. Manoso
Dimitra Doufekias
Megan E. Gerking
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Facsimile: (202) 887-0763
rmanoso@mofo.com
ddoufekias@mofo.com
mgerking@mofo.com

Michael B. Miller
MORRISON & FOERSTER LLP
250 W 55th Street
New York, NY 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
mbmiller@mofo.com

*Counsel for Defendant Glenmark
Pharmaceuticals Inc., USA*

/s/ George G. Gordon
George G. Gordon
Julia Chapman
Forrest Lovett
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104-2808
Telephone: (215) 994-2382
Facsimile: (215) 655-2240

17

Facsimile: (202) 639-7890
john.taladay@bakerbotts.com
christopher.wilson@bakerbotts.com
ed.duffy@bakerbotts.com
joanna.adkisson@bakerbotts.com
michael.munoz@bakerbotts.com

Lauri A. Kavulich
CLARK HILL PLC
2001 Market Street, Suite 2620
Philadelphia, PA 19103
Telephone: (215) 640-8500
Facsimile: (215) 640-8501
lkavulich@clarkhill.com

Lindsay S. Fouse
CLARK HILL PLC
301 Grant St, 14th Floor
Pittsburgh, PA 15219
Telephone: (412) 394-7711
Facsimile: (412) 394-2555
lfouse@clarkhill.com

*Counsel for Defendants Taro
Pharmaceuticals U.S.A., Inc., Taro
Pharmaceutical Industries Ltd., and Sun
Pharmaceutical Industries Inc.*

*/s/ Devora W. Allon*
Devora W. Allon, P.C.
Alexia R. Brancato, P.C.
Gilad Bendheim
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-6460
devora.allon@kirkland.com
alexia.brancato@kirkland.com
gilad.bendheim@kirkland.com

*Counsel for Defendant Upsher-Smith
Laboratories, LLC*

*/s/ William S.D. Cravens*
William S.D. Cravens
MORGAN, LEWIS & BOCKIUS LLP

george.gordon@dechert.com
julia.chapman@dechert.com
forrest.lovett@dechert.com

D. Brett Kohlhofer
Christie Boyden
DECHERT LLP
1900 K Street NW
Washington, D.C.
Telephone: (202) 261-3300
Facsimile: (202) 261-3333
d.brett.kohlhofer@dechert.com
christie.boyden@dechert.com

*Attorneys for Defendant Lannett Company,
Inc.*

*/s/ Brian J. Smith*
Brian J. Smith
WILSON SONSINI GOODRICH &
ROSATI
1700 K Street, NW, 5th Floor
Washington, D.C. 20006
Telephone: (302)502-8417
brian.smith@wsgr.com

*Counsel for Defendant Mayne Pharma Inc.*

*/s/ Michael J. Hartman*
Robin P. Sumner
Michael J. Hartman

18

1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001
william.cravens@morganlewis.com

*Counsel for Defendants Perrigo New York, Inc. and Perrigo Company plc*

/s/Jason R. Parish
Jason R. Parish
BUCHANAN INGERSOLL & ROONEY PC
1700 K Street, NW, Suite 300
Washington, D.C. 20006
Telephone: (202) 452-7900
Facsimile: (202) 452-7989
jason.parish@bipc.com

Bradley J. Kitlowski
BUCHANAN INGERSOLL & ROONEY PC
Union Trust Building
501Grant Street
Pittsburgh, PA 15219
Telephone: (412) 562-8800
Facsimile: (412) 562-1041
bradley.kitlowski@bipc.com

Caroline B. Warren
BUCHANAN INGERSOLL & ROONEY PC
Carillon Tower
227 West Trade Street, Suite 600
Charlotte, NC 28202
Telephone: (704) 444-3371
Facsimile: (704) 444-3490
caroline.warren@bipc.com

*Counsel for Defendant Zydus Pharmaceuticals (USA) Inc.*

Melissa Hatch O'Donnell
TROUTMAN PEPPER LOCKE LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4000
Facsimile: (215) 981-4750
robin.sumner@troutman.com
michael.hartman@troutman.com
melissa.odonnell@troutman.com

*Attorneys for Defendants Impax Laboratories, LLC, Impax Pharmaceuticals, Inc., and West-Ward Pharmaceuticals Corp.*

/s/ Peter G. Siachos
Peter G. Siachos
Matthew G. Gallo
Nicholas R. Gex
GORDON REES SCULLY MANSUKHANI LLP
677 King Street, Suite 450
Charleston, SC 29403
Telephone: (843) 714-25
psiachos@grsm.com
mgallo@grsm.com
ngex@grsm.com

Clair E. Wischusen
GORDON REES SCULLY MANSUKHANI LLP
277 S. Washington Street, Suite 550
Alexandria, VA 22314
Telephone: (703) 650-7030
cwischusen@grsm.com

Hazel Mae Pangan
GORDON REES SCULLY MANSUKHANI LLP
101 W. Broadway Suite 2000
San Diego, CA 92101
Telephone: (619) 230-7479
hpangan@grsm.com

*Attorneys for Defendant, Epic Pharma, LLC*

19

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on March 23, 2026, with a copy of this document via the Court's CM/ECF system.

*/s/ Jeffrey C. Bank*

Jeffrey C. Bank

20