**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724<br>16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br><br>*HUMANA INC.*<br>*PLAINTIFF,*<br><br>*V.*<br><br>*ACTAVIS ELIZABETH, LLC, ET AL.,*<br>*DEFENDANTS.* | Case No. 2:18-cv-03299-CMR<br><br>HON. CYNTHIA M. RUFE |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION TO EXCLUDE CERTAIN OPINIONS OF STACY M. ARRUDA**

**FILED WITH REDACTIONS – PUBLIC VERSION**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 3

III. LEGAL STANDARDS ........ 6

IV. ARRUDA'S OPINIONS ARE BEING USED TO BOLSTER BRADFORD, HAVE NO RELIABLE BASIS, AND USURP THE ROLE OF THE FACTFINDER ........ 8

A. Arruda's Opinions of Bradford's Approach and Conclusions Are Not Rebuttal to Jensen But Are Improper "Bolstering" Testimony ........ 8

B. Arruda Cannot Reliably Opine on Bradford's Approach and Conclusions ........ 10

C. Arruda's Opinions Are Neither Relevant Nor Helpful to the Jury ........ 13

V. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES


*Brill v. Marandola*,
40 F. Supp. 2d 563 (E.D. Pa. 2018) ........................................ 15

*Cohen v. Cohen*,
125 F.4th 454 (3d Cir. 2025) ........................................ 7

*Daubert v. Merrell Dow Pharms., Inc.*,
43 F.3d 1311 (9th Cir. 1995) (*Daubert II*) ........................................ 8

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ........................................ *passim*

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ........................................ 12

*Giuli v. Montagna*,
2026 WL 66964 (M.D. Pa. Jan. 8, 2026) ........................................ 14

*In re Paoli Railroad Yard PCB Litigation*,
35 F.3d 717 (3d Cir. 1994), *aff'd* 801 F.3d 186 (3d Cir. 2015) ........................................ 7, 10

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ........................................ 6, 7

*Lasorsa v. Showboat: Mardi Gras Casino*,
2009 WL 2929234 (D.N.J. Sept. 9, 2009) ........................................ 13

*R.D. v. Shohola, Inc.*,
2019 WL 3801455 (M.D. Pa. Aug. 13, 2019) ........................................ 7

*S.Y. v. Roman Cath. Diocese*,
2024 WL 1231333 (D.N.J. Mar. 21, 2024) ........................................ 7

*Schneider v. Fried*,
320 F.3d 396 (3d Cir. 2003) ........................................ 7

*Sec. & Exch. Comm'n v. Ambassador Advisors, LLC*,
576 F. Supp. 3d 250 (E.D. Pa. 2021) ........................................ 15

*Soto-Gonzalez on behalf of AMS v. Drs' Ctr. Hosp.*,
2024 WL 753565 (D.P.R. Feb. 23, 2024) ........................................ 9

*Simmons Food, Inc. v. Indus. Risk Insurers*,
2015 WL 12914256 (W.D. Ark. Oct. 6, 2015) ........................................ 9




**FILED WITH REDACTIONS – PUBLIC VERSION**

*United States v. Charley*,
189 F.3d 1251 (10th Cir. 1999) ........................................................................7, 9

*United States v. Ford*,
481 F.3d 215 (3d Cir. 2007)..........................................................................................14

*United States v. Schneider*,
2010 WL 3734055 (E.D. Pa. Sept. 10, 2010) ..................................................................8, 9

**RULES**

Fed. R. Evid. 702 ........................................................................................................ *passim*

## DEFINITIONS

| Term | Description |
|---|---|
| Tr. | Ex. A to the Declaration of Jeffrey C. Bank, Excerpts of the Deposition Transcript of Stacy M. Arruda (March 18, 2026) |
| Arruda Rep. | Ex. B to the Declaration of Jeffrey C. Bank, Expert Report of Stacy M. Arruda (February 27, 2026) |
| Jensen Tr. | Ex. C to the Declaration of Jeffrey C. Bank, Excerpts of the Deposition Transcript of Erika Jensen (February 10, 2026) |
| Jensen Rep. | Ex. D to the Declaration of Jeffrey C. Bank, Expert Witness Report of Erika Jensen (January 9, 2026) |
| Bradford Rep. | Ex. E to the Declaration of Jeffrey C. Bank, Corrected Expert Report of Professor W. David Bradford, Ph.D. (December 10, 2025) |
| Bradford Rebuttal | Ex. F to the Declaration of Jeffrey C. Bank, Expert Rebuttal Report of Professor W. David Bradford, Ph.D. (February 27, 2026) |
| Bradford Tr. | Ex. G to the Declaration of Jeffrey C. Bank, Excerpts of the Deposition Transcript of W. David Bradford, Ph.D. (December 18, 2025) |

## I. INTRODUCTION

An expert must assist the trier of fact—not *become* the trier of fact. Yet that is exactly what Humana's expert, Stacy Arruda, views as her role. Humana is offering Arruda as a purported rebuttal expert to Defendant's phone records expert, Erika Jensen, who opined on the reliability of phone records and how Humana's liability economist, W. David Bradford, Ph.D., relies on those phone records. Yet Arruda goes further than Jensen's rebuttal to Bradford—and even further than Bradford himself. Arruda repeatedly testified that, based on her own review of certain record evidence, she has determined that certain phone calls definitively *happened*, that the participants of those calls are *known*, and that, in some situations, she has even determined what the *content* of those calls was. But each opinion here is outside of her purview—and not one that *anyone* can offer as an expert witness, let alone one Arruda can offer as purported rebuttal to Jensen.

First, the Court should exclude Arruda's opinions regarding Bradford because Humana is attempting to use Arruda (a former FBI agent) as an improper "bolstering" expert to effectively co-sign the opinions of Bradford (an economist). Defendants had only offered Jensen to rebut Bradford's use of phone records, meaning the telecommunications records produced in this case and plaintiff-created Phone Record Rule 1006 Summary Exhibits ("Plaintiff Summaries") purportedly summarizing those telecommunications records. Arruda's opinions on Bradford's "[redacted]"—while also unreliable—cannot possibly be proper rebuttal to Jensen, who specifically rebutted the reliability of *one* type of evidence relied upon by Bradford. Humana is attempting to improperly bolster Bradford's report by offering another expert to credit his (flawed) methodology and, accordingly, Arruda's opinions on Bradford should be excluded.

Second, the Court should also exclude Arruda's opinions regarding Bradford's approach and conclusions for having no reliable basis. On the face of her report, Arruda offers opinions



FILED WITH REDACTIONS – PUBLIC VERSION

=

about Bradford—claiming that she is seeking "[redacted]"; finding that "[redacted]t"; and even concluding that "[redacted]." Arruda Rep. ¶¶ 23, 74 (emphases added). Yet Arruda consistently testified at her deposition that she was unfamiliar with Bradford's approach, what materials he relied on, or what he concluded. Without any of that understanding, Arruda could not even say how *she* went about analyzing and reaching conclusions on Bradford's supposed "[redacted]"—testifying that "[redacted]" Tr. 233:14-23. Not only is that an improperly speculative basis for an expert conclusion, it is also directly contrary to Bradford's own testimony about the limited discovery record he examined. *E.g.*, Bradford Tr. 56:16-57:8, 291:7-12, 292:3-10. Moreover, Arruda conceded she had no scientific or specialized basis for her opinion that Bradford employed a "[redacted]" Tr. 154:5-155:19, 334:1-8. When asked what the "[redacted]" meant with respect to Bradford, all she could muster was that it meant that "[redacted]" Tr. 338:17-24. But Arruda cannot opine that Bradford used a "[redacted]" or find that he used the telecommunication records "[redacted]" where she did not analyze (nor even know) what Bradford did. *See, e.g.*, Tr. 195:13-19, 341:21-342:2.

Third, Arruda's opinions that draw conclusions based on the record are improper. Arruda testified that in reaching these conclusions, she did so without any methodology for interpretation—and often in a way that contradicted the evidence. This included asserting that certain alleged calls actually took place despite witnesses testifying under oath that they do not remember whether a call took place; one witness not remembering whether a call took place and

another witness denying it; and even a witness not remembering a call but merely testifying as to what topics that witness would *not* have discussed. *E.g.*, Tr. 185:5-186:21, 266:22-267:5. Arruda admitted that, in order to reach her conclusions, she weighed competing testimony between witnesses and even testified that she substituted her own view of what the participants of an alleged call *must* have discussed when it was different from the testimony of those witnesses themselves. *E.g.*, Tr. 286:1-14, 307:7-311:14. She made these credibility determinations about the sworn deposition testimony here because, in her view, witnesses "[redacted]" when "[redacted]" Tr. 181:16-20. Arruda's opinions that usurp the role of the factfinder are a textbook case for Rule 702 exclusion.

For the reasons set forth below, Defendants respectfully move to exclude any of Arruda's opinions and testimony regarding Bradford's review of the evidentiary record outside of telecommunication records, including conclusions Arruda reached based on her *own* review of the record beyond the scope of Bradford and Jensen. Specifically, Defendants move to exclude Paragraphs 10(d), 23-71, 72 (beginning at "[redacted]"), and 74 from Arruda's report, and all related testimony.

## II. BACKGROUND

***Bradford's reports.*** On December 10, 2025, Humana's liability economist, W. David Bradford, Ph.D., issued a "corrected" opening report opining, among other things, that "[redacted]" and that "[redacted]" Bradford Rep. ¶¶ 175-76. Bradford sets out his bases for these opinions in Section 5.6 of his report, titled "Evidence of Direct



FILED WITH REDACTIONS – PUBLIC VERSION

Communication." Bradford Rep. ¶¶ 174-419. Throughout this section, Bradford extensively cites telecommunications records and Plaintiff Summaries purporting to reflect communications between Defendants. In many instances, such records are the *only* evidence Bradford cites as support that particular people "[redacted]" or "[redacted]" *E.g.*, Bradford Rep. ¶¶ 181 n.129, 226 n.226, 194, n.165. In many instances, Bradford even cites such records—with no other evidence apart from what he views as a close-in-time price increase—to support his inferences about the content of an alleged phone communication. *E.g.*, Bradford Rep. ¶¶ 290 n.335, 334 n.434, 406 n.652. In his reply report, Bradford did not address his use of telecommunication records, offer any response to Jensen's critiques, or make any reference to Arruda's opinions about his "[redacted]." *See* Bradford Rebuttal Rep.

***Jensen's report.*** On January 9, 2026, Defendants submitted the expert report of Erika Jensen, a former FBI Special Agent retained to analyze Bradford's opinions "[redacted]" Jensen Rep. ¶¶ 1-3. Based on her experience subpoenaing and analyzing telecommunications records, Jensen opines that:

> [redacted]

Jensen Rep. ¶¶ 16-17.

=

To illustrate the limitations of telecommunication records, Jensen discusses examples from Bradford's report in which he cites telecommunications records and Plaintiff Summaries to conclude that certain individuals "[redacted]" or "[redacted]." Jensen Rep. ¶¶ 30-58. As she made clear, Jensen's role was not to opine whether the alleged communications in Bradford's report actually occurred (nor to opine on the participants and content of any calls). *E.g.*, Jensen Rep. ¶ 58 ("[redacted]); Jensen Tr. 169:2-18 [redacted].

***Arruda's "rebuttal" report and deposition.*** On February 27, 2026, Humana submitted the "rebuttal" report of Stacy M. Arruda, a former FBI Special Agent who spent most of her career in cybercrime and counterintelligence and currently serves as the sole employee of her cybersecurity consulting business. Arruda asserts that she was retained to "[redacted]" Jensen's opinions with regard to [redacted] Arruda Rep. ¶ 1. Among other things, Arruda concludes that "[redacted] Arruda Rep. ¶ 23 (emphases added). Despite asserting that this conclusion is based on her "[redacted]" Arruda Rep. ¶ 24, Arruda repeatedly cites deposition testimony and documentary evidence that Bradford does *not* cite in his report and that Jensen does not mention or rely upon. *E.g.*, Arruda Rep. ¶¶ 25, 31, 43, 44, 48, 50. In some



FILED WITH REDACTIONS – PUBLIC VERSION

=

instances, Arruda even cites *phone records* that Bradford does not rely upon and that Jensen does not mention. *E.g.*, Arruda Rep. ¶¶ 28, 58. At her deposition, Arruda contradicted her report on her assignment, the scope of her report, and the opinions she is offering in this case. In her report, Arruda states that her assignment was to review, evaluate, and respond to Jensen's opinions regarding the reliability, limitations, and usefulness of telecommunications records, including those relied upon in Bradford's report. During her deposition, however, Arruda testified that she was charged with determining whether certain phone calls actually "happened." Tr. 234:11-22, 315:13-22, 331:13-332:22. She also attempted to walk back her analysis and opinions reflected on the face of her report about Bradford. Arruda stated in her report that her opinions are based on her "[redacted]" Arruda Rep. ¶¶ 24, 30, 34, 46, 49, 57, 61, 65. However, at her deposition, Arruda testified that she undertook an *independent* investigation that involved searching for and reviewing additional telecommunications records, deposition testimony, and "[redacted]" in the discovery record beyond those cited in the relevant sections of Bradford's report. Tr. 194:23-195:25, 230:19-231:14, 234:11-235:23, 323:9-23.

## III. LEGAL STANDARDS

In assessing whether an expert's testimony is admissible under Rule 702, the trial court acts as a "gatekeeper" to ensure that the proffered testimony is "not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). As the proponent of Arruda's testimony, Humana bears the burden of establishing its admissibility by a preponderance of the evidence. *Daubert*, 509 U.S. at 592; Fed. R. Evid. 702. Under Rule 702, an expert can offer opinions at trial only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is



FILED WITH REDACTIONS – PUBLIC VERSION

=

the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 597. The trial judge's "gatekeeping" obligation applies not only to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge. *Kumho Tire*, 526 U.S. at 141.

The Third Circuit has explained that Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability, and fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citing *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 741-43 (3d Cir. 1994), *aff'd* 801 F.3d 186 (3d Cir. 2015)). Proffered testimony is "reliable" only if it is based on "good grounds"— "methods and procedures of science rather than [] subjective belief or unsupported speculation." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 742 (quotations omitted). To "fit," testimony must be "sufficiently tied to the facts of the case" to assist the trier of fact. *Cohen v. Cohen*, 125 F.4th 454, 460 (3d Cir. 2025) (citing *Daubert*, 509 U.S. at 591). In general, experts who merely recite factual testimony or serve only to bolster another witness's credibility will not assist the trier of fact and thus do not meet Rule 702's "fit" requirement. *See United States v. Schneider*, 2010 WL 3734055, at *6 (E.D. Pa. Sept. 10, 2010) (citing *United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999)); *S.Y. v. Roman Cath. Diocese*, 2024 WL 1231333, at *6 (D.N.J. Mar. 21, 2024) (expert's recitation of deposition testimony did not "fit" the case because "the trier of fact [could] review the evidence in the record themselves."); *see also R.D. v. Shohola, Inc.*, 2019 WL 3801455, at *2 n.2 (M.D. Pa. Aug. 13, 2019) ("While [an expert's] recitation of [the] factual testimony may add a certain academic cachet to this evidence, it is not proper expert testimony.").

The Court accords an expert's opinion no presumption of admissibility. Courts should exclude expert testimony "unless they are convinced that it speaks clearly and directly to an issue

=

in dispute in the case, and that it will not mislead the jury." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995) (*Daubert II*).

## IV. ARRUDA'S OPINIONS ARE BEING USED TO BOLSTER BRADFORD, HAVE NO RELIABLE BASIS, AND USURP THE ROLE OF THE FACTFINDER

### A. Arruda's Opinions of Bradford's Approach and Conclusions Are Not Rebuttal to Jensen But Are Improper "Bolstering" Testimony

Arruda's opinions regarding Bradford's "[redacted]" and conclusions that he used the telecommunications records "[redacted]" should be excluded because they are not proper grounds for expert testimony. *See Schneider*, 2010 WL 3734055, at *6 (holding that expert's testimony constituted impermissible bolstering where it "serve[d] to bolster the credibility" of another witness) (citations omitted). Instead, they are inadmissible assessments of the credibility and reliability of the report and opinion of another expert.

Arruda's opinions go far beyond the scope of Jensen's report and purport to analyze whether Humana's other expert's review of the evidence was proper. Jensen's assignment was limited to assessing Bradford's reliance on *one category* of material—telecommunication records. Jensen Tr. 99:6-101:14 (testifying that her "[redacted]"). Indeed, as to that, Arruda and Jensen do not disagree that the phone records themselves do not confirm that calls took place, who the participants were, or what they discussed. *See, e.g.*, Arruda Rep. ¶ 49 ("[redacted]"). However, even though Arruda acknowledged the boundaries of Jensen's assignment, she took it upon herself to offer a new opinion on material outside the scope of that assignment. Arruda Rep. ¶ 72 ("[redacted]



FILED WITH REDACTIONS – PUBLIC VERSION

=

[redacted]”). In doing so, Arruda went further and tried to analyze record evidence far outside Jensen’s inquiry—including evidence that neither Jensen nor Bradford examined. Her purpose appeared to be to bolster Bradford and offer new opinions about record evidence.

Thus, not only are Arruda’s opinions outside the scope of proper rebuttal, they constitute improper bolstering. “In general, expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury’s vital and exclusive function to make credibility determinations and therefore does not ‘assist the trier of fact’ as required by Rule 702.” *United States v. Schneider*, 2010 WL 3734055, at *6 (E.D. Pa. Sept. 10, 2010) (quoting *United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999)). *See also Simmons Food, Inc. v. Indus. Risk Insurers*, 2015 WL 12914256, at *2 (W.D. Ark. Oct. 6, 2015) (one expert “may not offer opinion testimony which would be cumulative to the expert testimony of [another] other retained expert” and excluding opinions which “serve no purpose other than to ‘bolster’ [another expert’s] opinions”); *Soto-Gonzalez on behalf of AMS v. Drs’ Ctr. Hosp.*, 2024 WL 753565, at *8 (D.P.R. Feb. 23, 2024) (“Although an expert may rely on other witnesses’ testimony or other expert’s conclusions to form an opinion, an expert cannot merely reiterate, vouch for, or bolster the opinions of someone else.”) The risk of confusion for the jury here is clear, and Humana should be prohibited from offering a former FBI agent to endorse an unspecified “approach” of a liability economist and conclude that it was “appropriate.”

**B. Arruda Cannot Reliably Opine on Bradford’s Approach and Conclusions**

In addition to being improper bolstering testimony, Arruda has no reliable basis for offering a second opinion on Bradford’s evidentiary review and conclusions. The disconnect between Jensen and Arruda on scope is clear from the face of Arruda’s report. While Jensen only opines on



**FILED WITH REDACTIONS – PUBLIC VERSION**

=

telecommunication records, Arruda purports to analyze "[redacted]." Arruda Rep. ¶ 23 (emphasis added). Arruda then states nine more times in her report that she "[redacted]" Arruda Rep. ¶¶ 24, 30, 34, 43, 46, 49, 57, 61, 65. In her deposition, she changed course and could not say what Bradford actually did or relied on—testifying that "[redacted]" Tr. 233:14-23. The problem is that Arruda is not just offering an opinion about Bradford's use of the telecommunication records—which may be within the scope of rebuttal to Jensen—she is testifying about Bradford's *overall review* of the evidentiary record and how it informs *his opinions*. "[redacted]" Arruda Rep. ¶ 23. This is improper expert opinion in at least three ways.

First, testimony is "reliable" only if it is based on "good grounds"—"methods and procedures of science rather than [] subjective belief or unsupported speculation." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 742 (quotations and citation omitted). Arruda articulated no methodology for opining on Bradford's approach and admitted that she did not "[redacted]" Tr. 195:17-19. Yet she reaches conclusions *about the quality of* Bradford's approach—concluding that he used a "[redacted]" and that "[redacted]" Arruda Rep. ¶ 74. Without any basis for that opinion, it must be excluded.

Second, the disconnect between what Arruda cites versus what Bradford cites demonstrates that Arruda could not *possibly* have a reliable methodology for reaching conclusions on what



FILED WITH REDACTIONS – PUBLIC VERSION

=

*Bradford* did. Arruda reviewed and relied on record evidence well beyond Bradford's own citations, and admitted doing so. Tr. 236:2-21, 281:17-282:8. In fact, she repeatedly testified that she did not even know what Bradford relied upon. Tr. 232:2-12, 236:2-8. While she "[redacted]" Bradford cited, "[redacted]" *E.g.*, Tr. 197:22-198:7.[1] When that occurred, she conducted an "[redacted]" that involved searching for and reviewing telecommunications records, deposition testimony, and "[redacted]s" in the record beyond those cited by Bradford. Tr. 194:23-195:25, 230:19-231:14, 234:11-235:23, 323:9-23. In fact, although she stated 11 times in her report that she analyzed the materials cited by Bradford, she then described her approach differently at her deposition. "[redacted]" Tr. 196:23-197:20.

For example, there are many instances where Bradford *solely* cites a phone record as support for a call happening, and Jensen criticizes Bradford for relying on that record to conclude that two individuals spoke. Then Arruda—conducting *her own review* of the record beyond what Bradford or Jensen cited—finds that "[redacted]"[2] Arruda Rep. ¶ 42. But Arruda does not rely on what Bradford did—she relies on additional work *she* did outside the scope of any work done by Bradford or Jensen. Tr. 161:2-8 ("[redacted]

[1] Arruda sometimes even substituted new sources for the few things that Bradford *did* cite, ignoring what Bradford cited altogether. *See, e.g.*, Arruda Rep. ¶¶ 28, 58.

[2] Moreover, at her deposition Arruda admitted to making two facial errors in reviewing the evidence on Doxy Mono and Lidocaine-Prilocaine and reaching her conclusions. Tr. 251:1-255:25, 308:3-312:8. But in any event, the evidence on which she conceded committing errors is not even evidence that Bradford cited—and thus, again, would not be part of any reliable methodology for opining on *Bradford's* approach. The errors nonetheless demonstrate her lack of specialized knowledge and reliable methodology for drawing conclusions from the record evidence in this case, something that the jury is equally equipped to do (and is, in fact, in the exclusive domain of the factfinder, *see infra* Section IV.C.).

=

[redacted]”).

“[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.” *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). The “analytical gap” is clear here, as Arruda does not examine what Bradford actually relied on—instead reaching conclusions about *Bradford’s* approach to the record based on *Arruda’s* review of the record. In other words, Arruda did *more* than Bradford to opine on whether Bradford did *enough* to reach his conclusions.

Third, even if Arruda knew anything about Bradford’s approach, Arruda’s conclusions that what Bradford did was “appropriate” would still not be a reliable or admissible expert opinion. Arruda conceded that her opinions regarding Bradford’s approach to telecommunications records are not based on any specialized or technical knowledge. She could offer no specialized or scientific definitions of “[redacted]” or “[redacted]” other than “[redacted]” (which she could not meaningfully define). Tr. 327:3-13, 154:19-155:5 (“[redacted]”). She could not supply any clear definition of “[redacted]”—switching between it meaning “[redacted]” to “[redacted]” to “[redacted]” but “[redacted]” Tr. 338:13-339:8. All she could offer based on her background was that “[redacted]

=

[redacted]" Tr. 155:12-19. And despite that testimony, she testified that she did not know whether Bradford considered any contradictory or inconsistent testimony—or whether there was any in the record. Tr. 152:8-20, 334:9-16. The Court should exclude Arruda's opinions on this "[redacted]." *See Lasorsa v. Showboat: Mardi Gras Casino*, 2009 WL 2929234, at *4 (D.N.J. Sept. 9, 2009) (excluding expert's report where opinions were not based on "objective standards and technical knowledge" and "fall[] into the realm of everyday commonsense"). Moreover, if a "[redacted]" means "[redacted]" she cannot opine that *she* undertook such an approach (when she did not look at everything) or that *Bradford* did (when she does not even know *what* he looked at). This provides an independent basis for the unreliability of Arruda's opinions on Bradford.

### C. Arruda's Opinions Are Neither Relevant Nor Helpful to the Jury

Arruda's report and deposition confirm that when it comes to the telecommunication records that Bradford cites, Arruda believes she has now verified that the participants actually spoke. *E.g.*, Arruda Rep. ¶ 72 ("[redacted]"); Tr. 311:16-312:8 ("[redacted]") (emphases added), 227:10-19 ("[redacted].").

Because Arruda attempts to usurp the factfinder's role by making factual determinations—whether the calls occurred and, if so, their participants and substance—her opinions are not proper expert testimony. Arruda's conclusions on the discovery record cannot be helpful to a jury as they usurp the jury's exclusive role as the factfinder. This presents an independent basis for excluding

=

Arruda's testimony under Rule 702. A key element of a relevance or "fit" analysis under Rule 702 is "whether expert testimony proffered in the case is sufficiently tied to the fact of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (emphasis added); *see also United States v. Ford*, 481 F.3d 215, 219 n.6 (3d Cir. 2007) ("[F]it is [primarily] a relevance concern.") But Arruda offers expert opinions that seek to remove the jury's role altogether. As courts have explained, "the jury has the *exclusive* function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in evidence, and reaching ultimate conclusions of fact." *Giuli v. Montagna*, 2026 WL 66964, at *5 (M.D. Pa. Jan. 8, 2026) (cleaned up). Arruda seeks to usurp each of these.

Arruda repeatedly testified that based on her own venture into the discovery record, she has "[redacted]" that (i) alleged phone calls *did* take place, (ii) the participants to such calls are *known*, and (iii) the *content* of these alleged conversations is sometimes known too. *E.g.*, Tr. 331:13-332:9, 333:16-18 ("[redacted]"). She did this even when there was conflicting testimony, and testified she was "weighing" evidence and, tellingly, felt comfortable doing so *based on the burden of proof* in a civil case: "[redacted]." Tr. 286:1-9 (emphasis added). According to Arruda, when the witnesses testified in deposition that they did not recall whether a call happened, this was the equivalent of a witness testifying that the call *did* take place. Tr. 185:5-28, 284:25-285:25. She testified that the only way one could rely on witness testimony to conclude that a call did not happen is if the witnesses explicitly said, "[redacted]." Tr. 286:1-



FILED WITH REDACTIONS – PUBLIC VERSION

=

14 (emphasis added). And even then, she would weigh that assertion against other evidence to decide for herself whether it did. Tr. 180:12-181:23. As to determining credibility, Arruda was clear that she was doing that too regarding the witnesses' sworn deposition testimony—because witnesses "[redacted]" when "[redacted]" Tr. 181:10-23.

Expert testimony that usurps the role of either the jury or the court is not admissible. Courts have framed expert recitation of the evidentiary record as posing a "fit" problem under the relevance prong of *Daubert*. "Quite simply, the jury can review the evidence of the record themselves" and thus an expert's "recitation of the evidence would serve no purpose but to impermissibly bolster that evidence. But that is the jury's role—not [an expert's]." *Sec. & Exch. Comm'n v. Ambassador Advisors, LLC*, 576 F. Supp. 3d 250, 259–60 (E.D. Pa. 2021) (excluding expert testimony that amounted to an "uncritical recitation of Defendants' evidence [] too unreliable to warrant the cloak of expertise"). And in *Brill v. Marandola*, the court excluded an expert's suggested credibility determinations "because they usurp the fact-finding role of the jury and distract more than they aid." 40 F. Supp. 2d 563, 570-71 (E.D. Pa. 2018). Arruda's proffered testimony does just that. Throughout her deposition, Arruda opined on the credibility of fact witnesses and admitted that she weighed credibility in reaching her opinions. *E.g.*, Tr. 286:1-14. Presenting this information through Arruda under the "gloss" of expert testimony from a former FBI agent turned cybersecurity consultant will not assist the jury under Rule 702.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court exclude Arruda's improper opinions under Rule 702, specifically those found at Paragraphs 10(d), 23-71, 72 (beginning with [redacted]), and 74 of Arruda's report, and all related testimony.

=

/s/ Jeffrey C. Bank
Jeffrey C. Bank
Seth C. Silber
WILSON SONSINI GOODRICH & ROSATI, P.C.
1700 K Street, NW, 5th Floor
Washington, D.C. 20006
Telephone: (202) 973-8800
Facsimile: (866) 974-7329
jbank@wsgr.com
ssilber@wsgr.com

Chul Pak
Michael Sommer
WILSON SONSINI GOODRICH & ROSATI, P.C.
31 West 52nd Street, Fifth Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
cpak@wsgr.com
msommer@wsgr.com

*Counsel for the Mylan Defendants*

/s/ Seth Davis
Seth Davis
Sheron Korpus
Seth A. Moskowitz
David M. Max
KASOWITZ LLP
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
skorpus@kasowitz.com
smoskowitz@kasowitz.com
sdavis@kasowitz.com
dmax@kasowitz.com

*Counsel for Defendants Actavis Elizabeth LLC, Actavis Holdco U.S., Inc., Actavis Pharma, Inc., and Teva Pharmaceuticals USA, Inc.*

/s/ Mary Pat Brogan
Mary Pat Brogan
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone: 216.621.0200
mbrogan@bakerlaw.com

Carlos F. Ortiz
Kayley B. Sullivan
BAKER & HOSTETLER LLP
45 Rockefeller Center
New York, NY 10111-0100
Telephone: 212.589.4200
cortiz@bakerlaw.com
kbsullivan@bakerlaw.com

*Counsel for Defendant Heritage Pharmaceuticals, Inc.*

=

/s/ Donald W. Hawthorne
Donald W. Hawthorne
CARTER, LEDYARD & MILBURN LLP
28 Liberty Street
New York, NY 10005
Telephone: 212-238-8689
hawthorne@clm.com
*Counsel for Defendant Breckenridge Pharmaceutical, Inc.*

/s/ David Fioccola
Grant Esposito
David Fioccola
PROSKAUER ROSE LLP
Eleven Times Square New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
gesposito@proskauer.com
dfioccola@proskauer.com

Christopher Ondeck
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., NW
Suite 600 South
Washington, DC 20004
Telephone: (202) 416-5865
Facsimile: (202) 416-6899
ondeck@proskauer.com

*Counsel for Defendants Sandoz Inc. and Fougera Pharmaceuticals Inc.*

/s/ John M. Taladay
John M. Taladay
Christopher P. Wilson
Edward W. Duffy
JoAnna B. Adkisson
Michael A. Munoz
BAKER BOTTS LLP
700 K Street NW
Washington, DC 20001
Telephone: (202) 639-7700
Facsimile: (202) 639-7890
john.taladay@bakerbotts.com
christopher.wilson@bakerbotts.com
ed.duffy@bakerbotts.com

/s/ Brian T. Feeney
Brian T. Feeney
GREENBERG TRAURIG, LLP
1717 Arch Street, Suite 400
Philadelphia, PA 19103
Telephone: (215) 988-7812
Facsimile: (215) 717-5265
Brian.feeney@gtlaw.com

Roger Kaplan
Aaron Van Nostrand
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932-067
Telephone: (973) 360-7900
Facsimile: (973) 295-1321
kaplanr@gtlaw.com
aaron.vannostrand@gtlaw.com

*Counsel for Defendant Dr. Reddy's Laboratories, Inc.*

/s/ Robert W. Manoso
Robert W. Manoso
Dimitra Doufekias
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Facsimile: (202) 887-0763
rmanoso@mofo.com
ddoufekias@mofo.com

Michael B. Miller
MORRISON & FOERSTER LLP
250 W 55th Street
New York, NY 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
mbmiller@mofo.com

*Counsel for Defendant Glenmark Pharmaceuticals Inc., USA*

/s/ George G. Gordon
George G. Gordon



**FILED WITH REDACTIONS – PUBLIC VERSION**

=

joanna.adkisson@bakerbotts.com
michael.munoz@bakerbotts.com

Lauri A. Kavulich
CLARK HILL PLC
2001 Market Street, Suite 2620
Philadelphia, PA 19103
Telephone: (215) 640-8500
Facsimile: (215) 640-8501
lkavulich@clarkhill.com

Lindsay S. Fouse
CLARK HILL PLC
301 Grant St, 14th Floor
Pittsburgh, PA 15219
Telephone: (412) 394-7711
Facsimile: (412) 394-2555
lfouse@clarkhill.com

*Counsel for Defendants Taro Pharmaceuticals U.S.A., Inc., Taro Pharmaceutical Industries Ltd., and Sun Pharmaceutical Industries Inc.*

*/s/ Devora W. Allon*
Devora W. Allon, P.C.
Alexia R. Brancato, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
devora.allon@kirkland.com
alexia.brancato@kirkland.com

*Counsel for Defendant Upsher-Smith Laboratories, LLC*

*/s/ J. Clayton Everett Jr.*
J. Clayton Everett, Jr.
William S.D. Cravens
Y. Frank Ren
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004

Julia Chapman
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104-2808
Tel: (215) 994-2382
Fax: (215) 944-2222
george.gordon@dechert.com
julia.chapman@dechert.com
D. Brett Kohlhofer
DECHERT LLP
1900 K Street NW
Washington, D.C.
Tel: (202) 261-3349
Fax: (202) 261-3333
d.brett.kohlhofer@dechert.com

*Attorneys for Defendant Lannett Company, Inc.*

*/s/ Brian J. Smith*
Brian J. Smith*
Jordanne M. Steiner
WILSON SONSINI GOODRICH & ROSATI
1700 K Street, NW, 5th Floor
Washington, D.C. 20006
Telephone: (302)502-8417
brian.smith@wsgr.com
jsteiner@wsgr.com
*Admitted only in Illinois & Maine

Angela L. Brown
WILSON SONSINI GOODRICH & ROSATI
31 West 52nd Street, Fifth Floor
New York, NY 10019
Telephone: (212) 999-5800
Angela.brown@wsgr.com

*Counsel for Defendant Mayne Pharma Inc.*

*/s/ Robin P. Summer*
Robin P. Sumner
Michael J. Hartman
Melissa Hatch O'Donnell
TROUTMAN PEPPER LOCKE LLP
3000 Two Logan Square

=

Telephone: +1.202.739.3000
Facsimile: +1.202.739.3001
clay.everett@morganlewis.com
william.cravens@morganlewis.com
frank.ren@morganlewis.com

Stephen D. LaBrecque
MORGAN, LEWIS & BOCKIUS LLP
1 Federal Street
Boston, MA 02110
Telephone: +1.617.341.7700
Facsimile: +1.617.341.7701
stephen.labrecque@morganlewis.com

Harvey Bartle IV
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
Telephone: +1.215.963.5000
Facsimile: +1.215.963.5001
harvey.bartle@morganlewis.com

*Counsel for Defendants Perrigo Company plc and Perrigo New York, Inc.*

*<u>/s/ Jason R. Parish</u>*
Jason R. Parish
BUCHANAN INGERSOLL & ROONEY PC
1700 K Street, NW, Suite 300
Washington, D.C. 20006
Telephone: (202) 452-7900
Facsimile: (202) 452-7989
jason.parish@bipc.com

Gretchen L. Jankowski
Bradley J. Kitlowski
BUCHANAN INGERSOLL & ROONEY PC
Union Trust Building
501Grant Street, Suite 200
Pittsburgh, PA 15219
Telephone: (412) 562-8800
Facsimile: (412) 562-1041
gretchen.jankowksi@bipc.com
bradley.kitlowski@bipc.com

Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4000
Facsimile: (215) 981-4750
robin.sumner@troutman.com
michael.hartman@troutman.com
melissa.odonnell@troutman.com

*Attorneys for Defendants Impax Laboratories, LLC and West-Ward Pharmaceuticals Corp.*

*<u>/s/ Peter G. Siachos</u>*
Peter G. Siachos
GORDON REES SCULLY MANSUKHANI LLP
677 King Street, Suite 450
Charleston, SC 29403
Telephone: (843) 714-25
psiachos@grsm.com

Clair E. Wischusen
GORDON REES SCULLY MANSUKHANI LLP
277 S. Washington Street, Suite 550
Alexandria, VA 22314
Telephone: (703) 650-7030
cwischusen@grsm.com

*Attorneys for Defendant Epic Pharma, LLC*



**FILED WITH REDACTIONS – PUBLIC VERSION**

=

Caroline B. Warren
BUCHANAN INGERSOLL & ROONEY PC
Carillon Tower
227 West Trade Street, Suite 600
Charlotte, NC 28202
Telephone: (704) 444-3371
Facsimile: (704) 444-3490
caroline.warren@bipc.com

*Counsel for Defendant Zydus Pharmaceuticals (USA) Inc.*