**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724<br>No. 18-cv-3299<br>Hon. Cynthia M. Rufe |
| THIS DOCUMENT RELATES TO:<br>*Humana Inc. v. Actavis Elizabeth, LLC et al.* (18-cv-3299) | |

**HUMANA'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL MYLAN TO PRODUCE JAMES NESTA TO TESTIFY AT TRIAL**

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Fed. R. Civ. P. Rule 43 gives courts broad discretion to compel witnesses outside of their subpoena power to testify at trial. .......... 1

B. Good cause and compelling circumstances support requiring Nesta to testify. .......... 5

i. Mylan attempts to frustrate Humana's efforts to obtain Nesta's substantive testimony. .......... 5

ii. Mr. Nesta's testimony "evolved" materially as trial approached. .......... 6

iii. The *Vioxx* Factors are amply satisfied. .......... 6

*a. Mylan controls Nesta.* .......... 6

*b. This MDL is complex, multi-party, multi-state.* .......... 7

*c. Mylan's gamesmanship in shielding a key witness from the jury despite the lack of any articulable burden on Nesta.* .......... 7

*d. Mylan cannot be prejudiced by Nesta's testimony.* .......... 8

*e. Compelling Nesta to testify at trial is consistent with the flexibility needed to manage an MDL.* .......... 8

III. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

## Cases

*AAG Glass, LLC v. Laminados de Aller, S.A.*,
No. CV 21-638-SRF, 2024 WL 3444355 (D. Del. July 15, 2024) ........ 2

*Black Card LLC v. Visa USA Inc.*,
No. 15-CV-27-SWS, 2020 WL 9812009 (D. Wyo. Dec. 2, 2020) ........ 3

*Broumand v. Joseph,*
522 F. Supp. 3d 8 (S.D.N.Y. 2021) ........ 3

*Callier v. Jascott Invs., LLC*,
No. 3:22-CV-00301-LS, 2025 WL 97846 (W.D. Tex. Jan. 14, 2025) ........ 3

*Estate of Spear v. Commissioner*,
41 F.3d 103 (3d Cir. 1994) ........ 9

*Expansion Cap. Grp., LLC v. Patterson*,
No. CV 18-04135 (RAL), 2020 WL 42786 (D. Del. Jan. 3, 2020) ........ 3

*Hamer v. LivaNova Deutschland GmbH*,
994 F.3d 173 (3d Cir. 2021) ........ 7

*Hightower v. Ingerman Mgmt. Co.*,
No. 17-08025, 2022 WL 19266260 (D.N.J. May 26, 2022) ........ 2, 3

*Home Depot US, Inc. v. Lafarge N. Am.*, Inc.,
59 F.4th 55 (3d Cir. 2023) ........ 7

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
No. 3:19-MD-2885, 2021 WL 2605957 (N.D. Fla. May 28, 2021) ........ passim

*In re Actos (Pioglitazone) Prods. Liab. Litig.*,
No. 12–cv–00064, 2014 WL 107153 (W.D. La. Jan. 8, 2014) ........ 5

*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*,
No. 3:11-MD-2244-K, 2016 WL 9776572 (N.D. Tex. Sept. 20, 2016) ........ 2, 7

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
No. 2785-DDC-TJJ, 2021 WL 2822535 (D. Kan. July 7, 2021) ........ 7

*In re Jacoby Airplane Crash*,
2007 WL 559801 (D.N.J. Feb. 14, 2007) ........ 9

*In re Kirkland*
75 F.4th 1030 (9th Cir. 2023) ........ 4

*In re Newbrook Shipping Corp.*,
498 F. Supp. 3d 807 (D. Md. 2020) ........ 3

*In re Urethane Antitrust Litig.*,
No. 2:08-5169 (WJM-MF), 2016 WL 723014 (D.N.J. Feb. 22, 2016) ........ 2

*In re Vioxx Prods. Liab. Litig.*,
439 F.Supp.2d 640 (E.D. La. 2006) ........ 6, 8

*In re Xarelto (Rivaroxaban) Products Liability Litig.*,
No. MDL 2592, 2017 WL 2311719 (E.D. La. May 26, 2017) .......... 3, 4

*Mullins v. Ethicon, Inc.*,
No. 2:12-cv-02952, 2015 WL 8275744 (S.D.W. Va. Dec. 7, 2015) .......... 4, 6, 10

*Odyssey Contracting, Corp. v. Hercules Painting Co., Inc.*,
No. 2:17CV1255, 2022 WL 5237210 (W.D. Pa. Jan. 11, 2022) .......... 3

*Roundtree v. Chase Bank USA, N.A.*,
No. 13-239 MJP., 2014 WL 2480259 .......... 3

*Walsh v. Tara Constr., Inc.*,
No. 19-CV-10369-AK, 2022 WL 1913340 (D. Mass. June 3, 2022) .......... 2, 3

*Weiner v. Ocwen Financial Corp.*,
No. 2:14-cv-02597-DJC-DB, 2023 WL 6519292 (E.D. Cal. Oct. 5, 2023) .......... 5

*Williams v. Arctic Cat, Inc.*,
2014 WL 1028476 (N.D.N.Y. Mar. 13, 2014) .......... 10

**Rules**

Fed. R. Civ. P. Rule 43 .......... i, 1

Fed. R. Civ. P. Rule 43(a) .......... passim

Fed. R. Civ. P. Rule 45 .......... 2, 8

## I. INTRODUCTION

James Nesta's testimony is central to this trial. He has testified that he is willing to appear at trial. Mylan opposes Nesta's testimony because Nesta's credibility (and therefore Mylan's) will be a central feature of the jury's deliberations. Nesta's ever "evolving" testimony, including an Errata served just last week, requires that he be compelled to testify at trial. And contrary to Mylan's assertions, no precedent precludes the Court from granting Humana's motion and compelling Nesta to testify at trial.

Mylan's opposition seeks to manufacture certainty where this is an authority split by discounting all but its own narrow reading of Fed. R. Civ. P. Rule 43(a). Neither the Third Circuit nor this Court has resolved the question, however, and persuasive authority supports the relief Humana seeks. The Court should reject Mylan's unduly narrow reading of Rules 43(a) and 45 and grant Humana's motion to compel James Nesta to testify at trial in-person or by videoconference.

## II. ARGUMENT

### A. Fed. R. Civ. P. Rule 43 gives courts broad discretion to compel witnesses outside of their subpoena power to testify at trial.

The Court has discretion to compel James Nesta to testify at trial. Mylan concedes as much, noting that "[n]o precedent exists in this Circuit" requiring denial of Humana's motion.[1] While no court in this Circuit has decided whether a key percipient witness outside its subpoena power can be compelled to testify at trial, crucially, this percipient witness is completely controlled by Mylan. James Nesta is subject to continuing contractual cooperation obligations[2] with Mylan. Mylan has paid Nesta for years with his sole obligation to testify in its defense in this MDL. The Court should thus compel him to testify at trial in person or by contemporaneous videoconference.

A court in this Circuit has said as much: "Courts are split as to whether parties can, in fact, circumvent Rule 45's geographical limitation by seeking a subpoena compelling a witness to attend trial in a remote location under Rule 43," and "it does not appear that the Third Circuit has decided

---

[1] *See* Mylan's Opposition Brief ("Opp") at 7.

[2] *See, e.g.,* Nielsen Decl. Ex. 2(July 21, 2026 Nesta Tr.) at 38:8-41:3; *see also* Nielsen Decl. Ex. 4 (PX12623, MYLGP0011342535), Nesta's "Transition and Separation Agreement and Release" at 8-9, ¶ 12.

the question." *Hightower v. Ingerman Mgmt. Co.*, No. 17-08025, 2022 WL 19266260, at *3 n.2 (D.N.J. May 26, 2022). The question turns on the weight of persuasive authority.

Mylan's authorities expressly recognize that "'compelling circumstances' … [can] warrant requiring these witnesses to testify via live video feed under Federal Rule of Civil Procedure 43(a)." *In re Urethane Antitrust Litig.*, No. 2:08-5169 (WJM-MF), 2016 WL 723014, at *2 (D.N.J. Feb. 22, 2016). The inquiry is fact-dependent and, as Mylan elucidated, not subject to a single test. Compelling circumstances include[3] a key fact witness residing outside the court's subpoena power. *See Walsh v. Tara Constr., Inc.*, No. 19-CV-10369-AK, 2022 WL 1913340, at *1 (D. Mass. June 3, 2022)(quoting *Warner v. Cate*, No. 1:12-cv-1146, 2015 WL 4645019, at *1 (E.D. Cal. Aug. 4, 2015)) ("good cause and compelling circumstances may exist where a significant geographic distance separates the witness from the location of court proceedings"). Compelling circumstances include the opportunity to address witness testimony which has "evolved" over the course of an MDL. *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-MD-2885, 2021 WL 2605957, at *4 (N.D. Fla. May 28, 2021). Compelling circumstances also include meeting the *Vioxx* factors. *See In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, No. 3:11-MD-2244-K, 2016 WL 9776572, at *2 (N.D. Tex. Sept. 20, 2016) (finding "a showing of good cause" for satisfying "the five factors set forth by the *Vioxx* court").

This is not an end-run around the geographic parameters of Fed. R. Civ. P. Rule 45. Humana seeks relief pursuant to Rule 43(a) to meet the compelling circumstances in this case, and fulfill the purpose of an MDL bellwether trial, while also managing whatever "burden" may inure to Mr. Nesta. "The 100-mile limitation of Rule 45(c) restricts the place of *compliance* with the subpoena, not the location of the court from which the subpoena issues[,]" so Mr. Nesta may testify remotely within the geographical limits of Rule 45(c). *Walsh*, 2022 WL 1913340, at *2; *accord* Fed. R. Civ. P. 45 Advisory Comm. N. to 2013 Amd. ("unlike the prior rule, place of *service* is not critical to place of *compliance*")

[3] They *can* include "unexpected … accident or illness[,]" but that is by no means the sole circumstance, which Mylan elides. Opp at 2, 11-12. (citing *Hightower v. Ingerman Mgt. Co.*, No. 17-08025, 2022 WL 19266260, at *3 (D.N.J. May 26, 2022) and *AAG Glass, LLC v. Laminados de Aller, S.A.*, No. CV 21-638-SRF, 2024 WL 3444355, at *2 (D. Del. July 15, 2024)).

(emphasis added). And if Nesta must travel to Philadelphia to testify, he does so on Mylan's dime, and is not burdened pecuniarily.[4]

An opposing party's refusal to produce a witness at trial is itself part of the calculus. In *Walsh*, "Plaintiff's refusal to produce [the witness] for trial [left] videoconference as the only option to secure his live trial testimony." 2022 WL 1913340, at *1. The same is true here, and unlike the witness in *Walsh*, who relayed that "his preference is not to be involved as a witness," *id.*, Mr. Nesta testified that he would attend trial if asked. Mot. at 4, 6.

Mylan raises no controlling authority to the contrary. Its cases are factually distinct[5] or expressly acknowledge that courts may compel a witness outside of their subpoena power to testify live at trial, at least by videoconference. *See Broumand v. Joseph,* 522 F. Supp. 3d 8, 23–24 (S.D.N.Y. 2021) (acknowledging *In re Newbrook Shipping Corp.*, 498 F. Supp. 3d 807 (D. Md. 2020) and *In re Xarelto (Rivaroxaban) Products Liability Litig.*, No. MDL 2592, 2017 WL 2311719 (E.D. La. May 26, 2017), in which the court adopted Humana's approach); *see also Black Card LLC v. Visa USA Inc.*, No. 15-CV-27-SWS, 2020 WL 9812009, at *2 (D. Wyo. Dec. 2, 2020) (though declining to follow, expressly acknowledging other courts will permit nationwide subpoenas for remote testimony) (citing *In re*

[4] *See* Nielsen Decl. Ex. 1 (Nov. 19, 2025 Nesta Tr.) at 22:13-24:10; 24:15-22; 25:4-29:9; 60:4-62:89; *accord id.* at 23:18-25:6; *see also* Nielsen Decl. Ex. 2, (July 21, 2026 Nesta Tr.) 31:21-32:23.

[5] *See Hightower v. Ingerman Mgmt. Co.*, No. CV 17-08025, 2022 WL 19266260, at *3 (D.N.J. May 26, 2022) ("the Court previously advised the parties it would not permit remote testimony by another witness, Plaintiff's former supervisor, due to his vacation plans, because that did not constitute good cause or compelling circumstances[;]" but the Court has not so ruled, here); *see also Expansion Cap. Grp., LLC v. Patterson*, No. CV 18-04135 (RAL), 2020 WL 42786, at *4 (D. Del. Jan. 3, 2020) (the Court's holding rested on the fact that the putative jurisdictional hook was that the witness "[r]egularly vacation[ed]" within 100 miles of the courthouse – Humana's motion rests on Mylan's total control of Nesta, an indispensable witness, creating compelling circumstances to compel his testimony); *see also Odyssey Contracting, Corp. v. Hercules Painting Co., Inc.*, No. 2:17CV1255, 2022 WL 5237210, at *4 (W.D. Pa. Jan. 11, 2022) (where, unlike here, the witness was no longer under the control or employment of defendant; in contrast, in this case, Nesta is in Mylan's sole control, and is being paid to testify in Mylan's defense); *Roundtree v. Chase Bank USA, N.A.*, No. 13-239 MJP., 2014 WL 2480259, at *1 (plaintiffs sought to re-depose a 30(b)(6) witness; here, Humana seeks trial testimony from a key fact witness); *see also Callier v. Jascott Invs., LLC*, No. 3:22-CV-00301-LS, 2025 WL 97846, at *1 (W.D. Tex. Jan. 14, 2025) (putative witness was "an undisclosed, un-deposed witness via live transmission from a foreign country during trial in [the] matter[,]" whereas Nesta is a known, deposed individual, paid and coached to disclaim all memories save for "not fixing prices[;]" and who testified he has the threat of owing over a million dollars in counsel fees hanging over his head if he does not cooperate with Mylan).

*Xarelto*, 2017 WL 2311719, at *2 and *Mullins v. Ethicon, Inc.*, No. 2:12-cv-02952, 2015 WL 8275744, at *2 (S.D.W. Va. Dec. 7, 2015)).

Some of Mylan's authorities[6] expressly support Humana's motion: in *Orbital Engineering, Inc. v. Buchko*, the Western District acknowledged that "it can consider and grant a request for a witness to appear from a different location upon good cause shown[,]" and in its footnote 1, notes *In re Xarelto*, which relies on *Vioxx*.[7] No. 2:20-593, 2022 WL 170043, at *2 (W.D. Pa. Jan. 19, 2022). The *Orbital* court did not rule on the merits of Rule 45 subpoena relief; rather, the court noted that "'[w]hen an order under Rule 43(a) authorizes testimony from a remote location, the witness can be commanded to testify from any place described in Rule 45(c)(1)[,]'" and observed that the movant "ha[d] not sought an order under Rule 43(a)." *Id.* at *2 (brackets in original). To be clear, Humana seeks relief under Rule 43(a). *See* Mot. at 8.

Mylan's attempt to ossify the doctrine through appellate precedent fares no better. The Third Circuit in *Hightower* did not examine the merits of FRCP Rule 43(a) argument at all. Rather the court's analysis focused on counsel's misrepresentation to a witness outside the court's subpoena power that the subpoena was legally enforceable, an assertion made *before* counsel completed his legal research and was likely a *post hoc* justification. *See* 2022 WL 19266260, at *1-3 & n.1; *see also* No. 22-2589, 2024 WL 2794408, at *3-4 & n.24 (3d Cir. May 31, 2024). Humana has served no subpoena, as it is proper to first seek relief under Rule 43(a). *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-MD-2885, 2021 WL 2605957, at *4 (N.D. Fla. May 28, 2021). And *In re Kirkland* is similarly unpersuasive. *See* 75 F.4th 1030 (9th Cir. 2023). Not only is the case well-outside the Third Circuit, but Ninth Circuit District Courts interpreting *In re Kirkland* regard hiding witnesses behind Rule 45's 100-mile wall to force an adversary to "rely on deposition testimony in their case-in-chief," particularly if a defendant intends to call that witness live, as rank "gamesmanship." *Weiner v. Ocwen Financial Corp.*, No. 2:14-cv-

[6] Mylan simply misstates other holdings. The *Orbital* court did not "recognize[]" depositions as "superior," but simply observed that the Advisory Committee Note states what it states. 2022 WL 170043, at *2.

[7] No. 2:20-593, 2022 WL 170043, at *2 n.1 (W.D. Pa. Jan. 19, 2022) (citing, *inter alia*, *In re Xarelto*, 2017 WL 2311719, at *4.). *Xarelto* rests on *Vioxx*. *See* 2017 WL 2311719, at *2-3 (citing and applying *Vioxx*). Mylan misconstrues the relationship between *Orbital* and *Vioxx* via *Xarelto*, again casting aspersions on Humana.

02597-DJC-DB, 2023 WL 6519292, at *1-2 (E.D. Cal. Oct. 5, 2023) (applying *In re Kirkland*). The Court should deny Mylan's gambit.

**B. Good cause and compelling circumstances support requiring Nesta to testify.**

The circumstances here satisfy Rule 43(a) under any of the formulations courts have applied. Nesta is a key percipient fact witness. Witnesses in this case have testified that they had conversations with Nesta in which they discussed competitively sensitive information – including, at least, Della Lubke, Anthony Thomassey, Kevin Green, Nisha Patel, Tony Polman, and Tim Gustafson, who were employed at rival generic manufacturers. Mot. at 6.

**i. <u>Mylan attempts to frustrate Humana's efforts to obtain Nesta's substantive testimony.</u>**

At his July 2026 deposition, Mr. Nesta repeatedly testified that he could not recall the substance of particular competitor communications while *simultaneously* giving categorical testimony of explicitly 'remembering' that he never entered any agreement concerning pricing or market allocation. *See, e.g.*, Nielsen Decl. Ex. 3 (Nesta Tr. July 22, 2026) at 543:11–14 ("Don't remember the phone conversations but what I do know is never had an agreement around pricing or market allocation with a competitor."). Multiple witnesses have testified that they discussed competitively sensitive information with Mr. Nesta, completely contradicting his testimony. Mot. at 6. That testimony leaves material subjects unresolved and makes contemporaneous examination necessary so the jury can assess Nesta's credibility, which will be core to Humana's significantly streamlined case at trial.

Here, as in *Walsh*, that is the precise outcome which Rule 43(a)[8] was designed to avoid by its "compelling circumstances" language. Particularly so in the first bellwether trial. *See In re Actos (Pioglitazone) Prods. Liab. Litig.*, No. 12–cv–00064, 2014 WL 107153, at *6 (W.D. La. Jan. 8, 2014) ("this first bellwether trial should present the testimonial evidence of both sides as fairly and completely as possible…."); *accord id.* at *5-11 (applying *Vioxx*, granting motion to compel live trial testimony via videoconference of witness outside the court's subpoena power).

[8] Mylan notes that Plaintiff served no trial subpoena on Mr. Nesta. Opp. at 1. It is proper to first seek relief under Fed. R. Civ. P. 43(a) before issuing a trial subpoena under these circumstances. *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-MD-2885, 2021 WL 2605957, at *4 (N.D. Fla. May 28, 2021).

**ii. <u>Mr. Nesta's testimony "evolved" materially as trial approached.</u>**

After asserting the Fifth Amendment to all substantive questioning in 2022, and withdrawing it in 2025 only as to a single drug on the eve of the clomipramine bellwether, Mr. Nesta finally withdrew his Fifth Amendment assertions in full mere weeks before this trial. Mylan's own brief admits as much in recording this sequence. Opp. at 14 & n.11. As in *In re 3M* , Mr. Nesta's testimony has "evolved" significantly. *See* 2021 WL 2605957, at *4. There, the court permitted testimony from a witness whose account had "evolved along with the MDL Plaintiffs' case strategies," notwithstanding extensive prior deposition and trial testimony;" *Id.* at *4–5. Just so, here.

Even after Mr. Nesta's July 2026 deposition, his testimony has continued to "evolve." On August 20, 2026, Mr. Nesta submitted an Errata which seeks to conform many of his answers to the non-responsive speech that he delivered repeatedly throughout his deposition—substantively changing the testimony in many instances.[9] The current disconnect between the video recording of his deposition and the corrected transcript will be confusing to a jury in this case, further emphasizing the need for Mr. Nesta to appear live at trial.

**iii. <u>The *Vioxx* Factors are amply satisfied.</u>**

Humana's *Vioxx* analysis speaks for itself. Mot. at 3-7. Mylan's attempts to obfuscate this analysis fail.

***a. Mylan controls Nesta.***

True, a party may "control" a witness through an employment relationship, including as a high-level executive or paid consultant, Opp. at 12, but the key factor is "**<u>control</u>** exerted over the witness by the defendant." *In re Vioxx Prods. Liab. Litig.*, 439 F.Supp.2d 640, 643 (E.D. La. 2006). The employment relationship proves control, not the other way around. *See, e.g.,* Opp. at 12 (citing *Mullins v. Ethicon, Inc.*, No. 2:12-CV-02952, 2017 WL 532102, at *1-2 (S.D. W.Va. Feb. 8, 2017)).

Here, the record demonstrates a continuing contractual and litigation relationship between Mylan and Nesta that is far more controlling than a mere employment relationship. Nesta is controlled

---

[9] *See* Appendix A, August 20, 2026 Errata served by James Nesta.

by Mylan in an egregious way, as he is paid to testify in Mylan's defense with the explicit threat, as he testified, of paying potentially over a *million dollars* in counsel fees if he is insufficiently cooperative. *See* Nielsen Decl. Ex. 1 (Nesta Tr., Nov. 19, 2025) at 26:2-28:20. Mylan admits that it entered a "cooperation provision [with Nesta] based on payment of legal fees that survives termination of employment…." Opp. at 4. As such, Mylan wields more power over Nesta than any regular employer. Nesta has agreed not just to do a job in exchange for money, but to affirmatively "cooperate" and provide "good faith assistance" in response to "requests for information or testimony" across several cases.[10] And if Nesta fails to do so, he is not simply fired as a regular employee would be, but must bear the *immense cost* of his own legal defense. Nesta must comply or pay. That is control. Those facts bear directly on practical control even though they do not recreate a formal employment relationship.

Mylan's authorities concerning whether post-employment obligations preserve formal employee status therefore do not resolve the separate practical-control inquiry. *See* Opp. at 3-6, 8, 12-13. They are far removed from the facts in this case, given Mylan's control of this witness are significantly unlike the authorities cited in its opposition.

***b. This MDL is complex, multi-party, multi-state.***

Mylan's invocation of *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 2785-DDC-TJJ, 2021 WL 2822535 (D. Kan. July 7, 2021), *Home Depot US, Inc. v. Lafarge N. Am.*, Inc., 59 F.4th 55, 61-62 (3d Cir. 2023), and *Hamer v. LivaNova Deutschland GmbH*, 994 F.3d 173, 177 (3d Cir. 2021) sidesteps the *Vioxx* test. The question is not whether an MDL has different *Rule 45* subpoena requirements, Opp. at 13, but whether the litigation is sufficiently complex to constitute compelling circumstances warranting flexibility under *Rule 43(a). See, e.g., In re DePuy*, 2016 WL 9776572, at *2. MDLs are sufficiently complex by definition; and this MDL is more complex than most. *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885, 2021 WL 2605957 (N.D. Fla. May 28, 2021).

***c. Mylan's gamesmanship in shielding a key witness from the jury despite the lack of any articulable burden on Nesta.***

---

[10] Nielsen Decl. Ex. 4 (PX12623, MYLGP0011342535), Nesta's "Transition and Separation Agreement and Release" at 8-9, ¶ 12.

Mylan does not contend that Nesta would be inconvenienced by testifying at trial. Opp. at 13. Rather, Mylan relies on the volume of Nesta's deposition testimony and the propriety of his Fifth Amendment revocation. *Id.* But this ignores the coached testimony that Mylan elicited and would like to put before the jury as-is. That is blatant gamesmanship that neither the *Vioxx* court nor this Court, in applying Rule 43(a), should abide.

***d. Mylan cannot be prejudiced by Nesta's testimony.***

Mylan simply regurgitates the *EpiPen* holding about the "burden" of testifying without connecting it to purported prejudice. Opp. at 14. Mylan cannot be prejudiced by Nesta's testimony since, as Mylan notes, it cannot be surprised by his testimony; he has already been deposed. *Vioxx*, 439 F.Supp.2d at 643-44. Nor does *EpiPen* supply the prejudice Mylan does not identify. While that court assumed that the high-level executive witnesses were under the defendants' control, 2021 WL 2822535, at *5, in this case the facts themselves show Mylan exerts near total control over Nesta. Moreover, *Epipen*'s five-factor discussion supports Humana here as, unlike in *Epipen*, a deposition *cannot* suffice given Nesta's shifting positions and ever "evolving" testimony, *infra* at n.10, which puts Nesta's credibility squarely at issue; and neither live nor live-remote testimony will burden Nesta given his cooperation agreement with Mylan requires his testimony on its behalf. This MDL requires flexibility, which Rule 43 provides, and no precedent precludes this Court from granting Humana's motion to compel.

***e. Compelling Nesta to testify at trial is consistent with the flexibility needed to manage an MDL.***

As before, the analysis on *Vioxx* factor two applies in equal force here, as the factors are effectively identical.

**C. Depositions do not obviate trial testimony.**

Mylan returns throughout its opposition to the volume of Mr. Nesta's deposition testimony and to Humana's designations. Opp. at 1, 10–11, 15. Humana does not dispute that depositions will ordinarily provide the superior means of securing testimony from a witness beyond the reach of a trial

subpoena. Opp. at 10. But "ordinarily" describes the general case, and two features of this record take it far outside the "ordinary" case.

First, a party that preserves deposition testimony from a witness beyond the Court's reach has not thereby conceded that live testimony is unnecessary. Rule 32(a)(4)(B) makes such testimony admissible, and the court in *Urethane*, Mylan's own authority, permitted exactly the designations Mylan now invokes against Humana. 2016 WL 723014, at *2 (D.N.J. Feb. 22, 2016). *AAG Glass* likewise confirms that deposition testimony remains available even where Rule 43(a) relief is denied: "Because Garcia and Diaz have both been deposed in this matter, denial of Defendants' motion under Rule 43(a) does not foreclose the introduction of their testimony at trial under Rule 32(a)(4)." 2024 WL 3444355, at *3. On Mylan's view, a diligent litigant would have to choose between preserving a trial record and preserving a Rule 43(a) request. Nothing in the Rules requires that choice.

Second, *Estate* does not supply the rule Mylan draws from it. *Estate of Spear v. Commissioner*, 41 F.3d 103 (3d Cir. 1994), Opp. at 12. *Spear* was an appeal from discovery sanctions: the Tax Court deemed facts admitted and shifted the burden of proof because a taxpayer declined to appear, and the Third Circuit vacated that ruling as an abuse of discretion. The prejudice discussion Mylan quotes was undertaken to decide whether an outcome-affecting sanction was warranted. Rule 43(a) is not mentioned in the opinion, and the court performed no good-cause analysis.

The sentence Mylan quotes around also states, in its first clause, the opposite of what Mylan argues elsewhere: "Although live testimony is generally preferable to videotaped testimony, the absence of such testimony, even from a key witness, is only minimally prejudicial when that witness is adverse and when there is a videotaped deposition that can be introduced in lieu of live testimony." 41 F.3d at 116. Mylan contends that "courts in the Third Circuit do not share" the view that live testimony is preferable to deposition testimony. Opp. at 10. The only Third Circuit decision it cites says otherwise in the very sentence on which it relies.

Crucially, the conclusion in *Spear* rested on a deposition record materially different from this one. The deposition there had been taken in contemplation of the witness's possible absence; the court reviewed it and found the testimony "lucid and informative," observing that the witness "did

relate, in response to questions, a great deal of information" and that the examination proceeded with "very few objections to the questions posed." *Id.* at 115–16. Decisively, the government "did not explain what additional questions it had … that she had not already answered during the deposition," and the court concluded that it "cannot conceive what more the IRS could have adduced at trial." *Id.* at 116. Here, by contrast, Humana can identify the examination that remains necessary. Namely, Nesta's conversations with competitors that multiple other witnesses recall and he does not. Humana does not seek merely a second opportunity to test credibility; it seeks examination on subjects the July deposition did not resolve.

Nor is a compilation of deposition excerpts equivalent to examination at trial. As the court observed in *Mullins v. Ethicon, Inc.*, remote live testimony "may be less favorable than live testimony from a witness seated at the witness stand, but it is more favorable than an attorney's cut of deposition videos," and it promotes coherence "especially when the alternative is spliced, edited, and recompiled clips of depositions that took place over multiple days." 2017 WL 532102, at *1, *4 (S.D. W. Va. Feb. 8, 2017). *Williams v. Arctic Cat, Inc.*, 2014 WL 1028476 (N.D.N.Y. Mar. 13, 2014), on which Mylan relies for the proposition that testimony "has already been preserved" and "can be presented to the jury at trial," is distinguishable. Opp. at 15–16. *Williams* involved no comparable change in the witness's testimonial posture and no identified need for additional examination; the preserved deposition therefore supplied the testimony needed for trial. That is the *Myers* posture, not this one. On this record, prerecorded deposition excerpts are not an adequate substitute for contemporaneous examination at trial. The Court should grant Humana's motion to secure Nesta's live testimony.

## III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant Humana's motion and require James Nesta to testify at trial in person or, alternatively, by contemporaneous videoconference from a Rule 45-compliant location.

Dated: August 28, 2026 Respectfully Submitted,

/s/ *W. Joseph Nielsen*
Peter D. St. Phillip, Jr.

Todd M. Schneider
J. Caleigh Macdonald

W. Joseph Nielsen
Raymond P. Girnys
Noelle Ruggiero
Uriel Rabinovitz
Deborah Rogozinski
Alexis H. Castillo
Thomas Griffith
LOWEY DANNENBERG, P.C.
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel. (914) 997-0500
pstphillip@lowey.com
jnielsen@lowey.com
rgirnys@lowey.com
nruggiero@lowey.com
urabinovitz@lowey.com
drogozinski@lowey.com
acastillo@lowey.com
tgriffith@lowey.com

Matthew A. Cartwright
LOWEY DANNENBERG, P.C.
100 Front Street, Suite 520
West Conshohocken, PA 19428
mcartwright@lowey.com

*Counsel for Humana Inc.*

SCHNEIDER WALLACE
COTTRELL KIM LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel.: 415-421-7100
tschneider@schneiderwallace.com
jmacdonald@schneiderwallace.com

Jason H. Kim
SCHNEIDER WALLACE
COTTRELL KIM LLP
300 S. Grand Ave., Suite 2700
Los Angeles, CA 90071
Tel. 415-421-7100
jkim@schneiderwallace.com

Peter B. Schneider
SCHNEIDER WALLACE
COTTRELL KIM LLP
3700 Buffalo Speedway, Suite 960
Houston, Texas 77098
Tel.: 713-338-2560415-421-7100
pschneider@schneiderwallace.com

David D. Burnett
SCHNEIDER WALLACE
COTTRELL KIM LLP
1050 30th Street NW
Washington, DC 20007
Tel.: 415-421-7100
dburnett@schneiderwallace.com

*Counsel for Humana Inc.*

# APPENDIX 1

# ERRATA OF DEPONENT JAMES NESTA

**Case Name:** *In re: Generic Pharmaceuticals Pricing Antitrust Litigation*, Case No. 16-MDL-2724 (E.D. Pa.)
**Deposition Date:** July 21-22, 2026
**Deponent:** James Nesta

I, James Nesta, have read the transcript of my deposition taken on July 21-22, 2026. The content thereof is an accurate transcription of the deposition, subject to the following corrections or changes:

| Page | Line | Change | Reason |
|---|---|---|---|
| 3 | 23 | Change somang@wsgr.com to "somang.lee@wsgr.com" | Correction |
| 17 | 1 | Change "Jeff" to "Joe" | Transcription Error |
| 27 | 15 | Change "on influence" to "influenced" | Transcription Error |
| 48 | 22 | Change "didn't" to "I didn't" | Transcription Error |
| 138 | 6 | Change "price increases" to "price-fixing" | Correction |
| 138 | 15 | Change "price increases" to "price-fixing" | Correction |
| 149 | 23-24 | Change "price increases" to "price-fixing" | Correction |
| 168 | 14-15 | Change "price increases" to "price-fixing" | Correction |
| 189 | 16-17 | Change "price increases" to "price-fixing" | Correction |
| 196 | 18-19 | Change "price increases" to "price-fixing" | Correction |
| 238 | 5 | Change "increase prices" to "price-fixing" | Correction |
| 240 | 5 | Change "price increases" to "price-fixing" | Correction |
| 277 | 3 | Change "price increases" to "price-fixing" | Correction |
| 353 | 24 | Change "a job" to "for a job" | Transcription Error |
| 392 | 24-25 | Change "price increases" to "price-fixing" | Correction |
| 401 | 22-23 | Change "price increases" to "price-fixing" | Correction |
| 434 | 3 | Change "price increases" to "price-fixing" | Correction |
| 435 | 16 | Change "price increases" to "price-fixing" | Correction |
| 449 | 15 | Change "price increases" to "price-fixing" | Correction |
| 450 | 3 | Change "price increases" to "price-fixing" | Correction |
| 481 | 23 | Change somang@wsgr.com to "somang.lee@wsgr.com" | Correction |
| 501 | 22 | Change "pricing" to "price-fixing" | Correction |
| 502 | 3 | Change "agreement or" to "agreement on" | Transcription Error |
| 502 | 11 | Change "agreements," to "agreements on" | Transcription Error |
| 502 | 21 | Change "agreements," to "agreements on" | Transcription Error |
| 503 | 4 | Change "pricing" to "price-fixing" | Correction |
| 521 | 8 | Change "agreement or" to "agreement on" | Transcription Error |
| 530 | 25 | Change "agreements or" to "agreements on" | Transcription Error |
| 540 | 21 | Change "price increases" to "price-fixing" | Correction |
| 542 | 20 | Change "agreements, pricing, or" to "agreements on pricing or" | Transcription Error |

| | | | |
|---|---|---|---|
| 582 | 20 | Change "pricing" to "price-fixing" | Correction |
| 605 | 23 | Change "agreement or" to "agreement on" | Transcription Error |
| 612 | 15-16 | Change "agreement or" to "agreement on" | Transcription Error |
| 613 | 7 | Change "pricing" to "price-fixing" | Correction |
| 616 | 14 | Change "pricing" to "price-fixing" | Correction |
| 634 | 14 | Change "agreement," to "agreement on" | Transcription Error |
| 646 | 12 | Change "pricing" to "price-fixing" | Correction |
| 757 | 4 | Change "agreement or" to "agreement on" | Transcription Error |
| 766 | 2 | Change "the type of agreement or pricing" to "any type of agreement on pricing" | Correction |
| 770 | 24 | Change "pricing" to "price-fixing" | Correction |
| 784 | 15 | Change "price increases" to "price-fixing" | Correction |
| 793 | 22 | Change "pricing around" to "pricing or around" | Transcription Error |
| 804 | 15 | Change "pricing" to "price-fixing" | Correction |
| 836 | 8 | Change "pricing" to "price-fixing" | Correction |
| 845 | 11 | Change "pricing, or aggregating [sic]" to "price-fixing or allocating" | Transcription Error |
| 846 | 8 | Change "agreements," to "agreements on" | Transcription Error |
| 899 | 5 | Change "contractually" to "criminally" | Transcription Error |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: August 20, 2026

Signed by:
F27611BBC9D6473...
James Nesta
Deponent