**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724<br>HON. CYNTHIA M. RUFE |

THIS DOCUMENT RELATES TO:

*Humana Inc. v. Actavis Elizabeth, LLC, et al*.
(18-cv-3299)

**PLAINTIFF HUMANA INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO ADMIT COCONSPIRATOR STATEMENTS (LEVOTHYROXINE)**

**TABLE OF CONTENTS**

I. INTRODUCTION ..... 1
II. BACKGROUND ..... 3
III. ARGUMENT ..... 5
A. THE CONSPIRACY'S EXISTENCE ..... 5
B. THE CONSPIRACY'S MEMBERS ..... 6
C. THE CONSPIRACY'S COURSE ..... 8
D. STATEMENTS IN FURTHERANCE OF THE CONSPIRACY ..... 9
1. Inter-Competitor Communications ..... 11
2. Internal Sandoz Communications ..... 12
3. Other Statements Relating to Levothyroxine Prices, Profits, or Customers ..... 14
4. Additional Statements ..... 15
IV. CONCLUSION ..... 16

## TABLE OF AUTHORITIES

### Cases

*Big Apple BMW, Inc. v. BMW of N. Am., Inc.*,
974 F.2d 1358 (3d Cir. 1992) ... 6

*Blumenthal v. U.S.*,
332 U.S. 539 (1947) ... 7

*Bourjaily v. U.S.*,
483 U.S. 171 (1997) ... 5

*Dahl v. Bain Cap. Partners, LLC*,
963 F. Supp. 2d 38 (D. Mass. 2013) ... 13, 14

*In re Domestic Drywall Antitrust Litigation*,
163 F. Supp. 3d 175 (E.D. Pa. 2016) ... passim

*In re Flat Glass Antitrust Litig.*,
385 F.3d 350 (3d Cir. 2004) ... 5, 6, 10

*In re Generic Pharms. Pricing Antitrust Litig.*,
No. 18-CV-3299, 2026 WL 2325239 (E.D. Pa. Aug. 11, 2026) ... 4, 9

*In re Magnesium Oxide Antitrust Litig.*,
No. 10-5943, 2011 WL 5008090 (D.N.J. Oct. 20, 2011) ... 7

*In re Mercedez-Benz Antitrust Litig.*,
157 F. Supp. 2d 355 (D.N.J. 2001) ... 7

*In re Processed Egg Prods. Antitrust Litig.*,
821 F. Supp. 2d 709 (E.D. Pa. 2011) ... 7

*In re Processed Egg Prods. Antitrust Litig.*,
No. 08-md-2002, 2019 WL 5656101 (E.D. Pa. Oct. 31, 2019) ... passim

*U.S. v. Adams*,
759 F.2d 1099 (3d Cir. 1985) ... 6

*U.S. v. Allen*,
492 Fed. Appx. 273 (3d Cir. 2012) ... 8

*U.S. v. Ammar*,
714 F.2d 238 (3d Cir. 1983) ... 8, 10, 13

*U.S. v. Cerone*,

830 F.2d 938 (8th Cir. 1987) ........ 13

*U.S. v. Cruz-Rea*,
626 F.3d 929 (7th Cir. 2010) ........ 10

*U.S. v. Duka*,
671 F.3d 329 (3d Cir. 2011) ........ 9

*U.S. v. Edwards*,
792 F.3d 355 (3d Cir. 2015) ........ 14

*U.S. v. Elder*,
840 F.3d 455 (7th Cir. 2016) ........ 10

*U.S. v. Gibbs*,
739 F.2d 838 (3d Cir. 1984) ........ 13

*U.S. v. Goins*,
11 F3d 441 (4th Cir. 1993) ........ 10

*U.S. v. Harriston*,
329 F.3d 779 (11th Cir. 2003) ........ 8

*U.S. v. Iossifov*,
45 F.4th 899 (6th Cir. 2022) ........ 10

*U.S. v. Johnson*,
No. 1:21-cr-39-RJC-7, 2026 WL 2001915 (W.D. Pa. July 10, 2026) ........ 15

*U.S. v. Kaplan*,
832 F.2d 676 (1st Cir. 1987) ........ 14

*U.S. v. Kemp*,
360 F. Supp. 2d 697 (E.D. Pa. 2005) ........ 7

*U.S. v. Miller*,
738 F.3d 361 (D.C. Cir. 2013) ........ 11

*U.S. v. Moran*,
493 F.3d 1002 (9th Cir. 2007) ........ 13, 14, 15

*U.S. v. Perlstein*,
126 F.2d 789 (3d Cir. 1942) ........ 8

*U.S. v. Provenzano*,
620 F.2d 985 (3d Cir. 1980) ........ 5

*U.S. v. Rea*,
621 F.3d 595 (7th Cir. 2010) ........ 10

*U.S. v. Roberts*,
14 F.3d 502 (10th Cir. 1993) .......... 11, 12

*U.S. v. Schlesinger*,
261 F. App'x 355 (2d Cir. 2008) .......... 12

*U.S. v. Schmit*,
881 F.2d 608 (9th Cir. 1989) .......... 10

*U.S. v. Turner*,
718 F.3d 226 (3d Cir. 2013) .......... 5

*U.S. v. Weaver*,
507 F.3d 178 (3d Cir. 2007) .......... passim

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*,
No. 15-cv-6480, 2022 WL 1036790 n.1 (E.D. Pa. Feb. 10, 2022) .......... 5

**Rules**

Fed. R. Evid. 104(a) .......... 5

Fed. R. Evid. 801(d)(2) .......... 1

Fed. R. Evid. 801(d)(2)(E) .......... passim

Fed. R. Evid. 803(6); 801(c)(2); 804(b)(3) .......... 9

Fed. R. Evid. 106 .......... 14, 15

## I. INTRODUCTION

The parties submitted competing letters to this Court on August 7, 2026 and August 13, 2026, respectively, regarding a proposed pretrial procedure for determining the admissibility of coconspirator statements pursuant to Fed. R. Evid. 801(d)(2)(E). *See* ECF No. 841, ECF No. 863.[1] The Court referred that dispute to Special Master Lawrence Stengel on August 18, 2026 for an expedited report and recommendation. ECF No. 886.[2] Since then, Humana has narrowed the scope of its upcoming trial significantly, to focus on a price-fixing conspiracy on one drug (Levothyroxine) involving three alleged coconspirators (Mylan, Lannett and Sandoz)—two of which will be defendants at the trial. This will greatly reduce the amount and scope of evidence that Humana will now seek to introduce as coconspirator statements against Mylan and Lannett under Fed. R. Evid. 801(d)(2)(E).[3]

Since the original letters were submitted, this Court issued an opinion and order denying Mylan's and Lannett's respective motions for summary judgment regarding Levothyroxine. ECF No. 946 at 60-72 (Corrected Memorandum Opinion dated 8/27/26). That opinion contains a detailed recitation of the undisputed facts relating to Levothyroxine, and findings about the sufficiency of the evidence regarding the conspiracy. *Id.* The summary judgment record therefore now establishes that, for the foundational purposes of Fed. R. Evid. 801(d)(2)(E): (1) the Levothyroxine conspiracy existed; (2) Mylan, Lannett and Sandoz each participated in the conspiracy; and (3) the conspiracy continued from at least December 2012 through July 2014.[4]

---

[1] Unless stated otherwise, ECF references throughout this brief are to the docket in *Humana Inc. v. Actavis Elizabeth, LLC, et al.*, 18-cv-3299-CMR.

[2] Defendants also submitted a letter in reply to Humana's August 13 letter on the evening of August 17, 2026, shortly before the Court referred the letter dispute to Special Master Stengel. ECF No. 877. On September 2, 2026, the Court issued an order staying all proceedings in *Humana I* for a period of 45-days. ECF No. 964. As a result, this issue has not yet been resolved.

[3] Humana does not seek a pretrial ruling regarding admissibility of any coconspirator statements made by Mylan or Lannett, because those statements will be admissible against those trial defendants as non-hearsay admissions of a party opponent under Fed. R. Evid. 801(d)(2).

[4] As discussed below, Humana's damages expert, Dr. William B. Vogt, has confirmed that the Levothyroxine

Given the narrowed scope of trial, and the summary judgment rulings already issued by this Court, Humana submits the attached Appendix A with an itemized list of documents produced by Sandoz (the only alleged Levothyroxine conspirator that will not participate at trial) that Humana will seek to admit as coconspirator statements against Mylan and Lannett at trial pursuant to Fed. R. Evid. 801(d)(2)(E). For each respective document, Appendix A includes a summary description of the statements therein and the bases for admission—similar to the process originally proposed by Defendants in their August 7, 2026 letter.[5] Humana requests a pretrial ruling that the statements made by Sandoz employees in those documents, as well as the anticipated testimony of Della Lubke outlined in Section III.D.1 below, were made during and in furtherance of the Levothyroxine conspiracy, are non-hearsay pursuant to Fed. R. Evid. 801(d)(2)(E), and should be deemed admitted for trial.

Humana also asks the Court to make a pretrial determination that—for any additional statements by Sandoz that Humana seeks to introduce at trial (such as through additional witness testimony)—the co-conspirator rule's foundational prerequisites are satisfied. Because the summary judgment record in this case (including this Court's opinion) clearly establishes the Levothyroxine conspiracy's existence, composition, and duration, Humana need only prove at trial that any such statements were made in furtherance of the conspiracy for the co-conspirator rule to apply.

For these reasons and those detailed further below, Humana respectfully requests that the Court grant this Motion.

---

conspiracy continued through at least December 2018—which is the same end date to which defendants asked Humana to stipulate for its damages period. Regardless, the coconspirator statements that Humana seeks to admit pursuant to Fed. R. Evid. 801(d)(2)(E) which are identified in Appendix A were all made between December 2012 and July 2014 (with the exception of one email and attachments sent in 2015)—which is safely within the conspiratorial time period analyzed by the Court in its summary judgment opinion.

[5] The statement-by-statement analysis conducted by Judge Pratter in *In re Processed Egg Products Antitrust Litigation*, which was proposed by Defendants here, is not necessary—and is in fact the exception, not the rule. For example, the analysis done by Judge Baylson in *In re Domestic Drywall Antitrust Litigation*, 163 F. Supp. 3d 175 (E.D. Pa. 2016), while very thorough, did not analyze each sentence in each document. Judge Baylson instead found some of the foundational elements to exist first, then found certain documents admissible—without looking at them on a statement-by-statement basis. The approach proposed by Humana here is essentially a middle ground between what Judge Pratter did in *Processed Egg Prods.* and what Judge Baylson did in *Domestic Drywall*.

## II. BACKGROUND

Humana's Complaint (the "*Humana I*" Complaint) originally included 22 individual drug conspiracies plus an overarching conspiracy, implicating approximately eighteen alleged coconspirators. Shortly before the scheduled *Humana I* trial, on August 7, 2026, Defendants proposed a pretrial process for determining the admissibility of coconspirator statements that would have been overly burdensome on the Court and parties. ECF No. 841. Humana objected to that process and proposed a more efficient procedure relying on the summary judgment record already in place to establish the foundational elements relating to each alleged conspiracy, which would allow the Court to make pre-trial rulings on the foundational issues and certain categories of statements, instead of looking at each on a "statement by statement" basis as requested by Defendants. ECF No. 863.

Since then, Humana has narrowed the scope of the upcoming *Humana I* trial to focus solely on a price-fixing conspiracy on one drug (Levothyroxine) involving three alleged coconspirators (Mylan, Lannett and Sandoz)—two of which will be defendants at the trial. *See* ECF No. 996. In addition, the Court denied Mylan's and Lannett's motions for summary judgment on Levothyroxine and made specific findings on the existence and composition of the Levothyroxine conspiracy. ECF No. 946. In its Corrected Memorandum Opinion dated August 27, 2026, the Court included a detailed recitation of facts, summarizing the conduct of Mylan, Lannett and Sandoz in furtherance of the Levothyroxine conspiracy from mid-2012 through July 2014. *Id.* at 60-67.

In denying the motions for summary judgment, the Court reached the following conclusions, among others, regarding the sufficiency of evidence regarding a Levothyroxine conspiracy:

- "The evidence supports the inference that Nesta [at Mylan] provided Lubke [at Sandoz] a list of such drugs, including levothyroxine. Indeed, the following month, Mylan did implement such an increase on levothyroxine. Given the notice given over a month before Mylan's increase and Lubke's testimony that sharing such knowledge could make Mylan vulnerable, *Humana produced sufficient evidence to establish that Nesta shared this information and that there was a tacit agreement between Mylan and Sandoz not to sabotage one another with pricing information*." *Id.* at 69 (emphasis

added).

- "[T]he evidence is sufficient to support a reasonable inference that Nesta warned Smith [at Lannett] and Greenstein [at Sandoz] that a Mylan price increase was coming, *obtained agreement that Lannett and Sandoz would follow*, and that on April 23, Nesta confirmed the timing of the information he had previously provided to Smith." *Id.* at 70 (emphasis added).
- "Humana presents record evidence that supports reasonable inferences that *Mylan intentionally notified competitors of its anticipated price increases and of the size of those increases and that it communicated with competitors to ensure that they would follow the increases, not seek to undercut the market, and not poach customers* from one another." *Id.* (emphasis added).
- "The Court finds that Humana has presented sufficient evidence such that a reasonable jury could infer that ***it is more likely than not that Mylan participated in a conspiracy regarding levothyroxine***." *Id.* at 71 (emphasis added).
- "There is evidence to support an inference that *Lannett shared its plans to increase its prices and follow Mylan's increases with competitors, including Sandoz*, based on communications in: January 2013, when Smith spoke with Nesta between Mylan and Lannett increases; August 2013, when Lannett confirmed the Mylan increase and relayed that information to customers; and April 2014, when Sandoz said it 'heard that Lannett was taking the price up to[o]' following calls between Smith (Lannett) and Greenstein (Sandoz)." *Id.* at 71-72 (emphasis added).
- "[T]he evidence to which Lannett points does not rebut the evidence this Court has recounted that supports a *reasonable inference of Lannett's participation in a levothyroxine conspiracy*." *Id.* at 72 (emphasis added).

Dr. Vogt, Humana's damages expert,[6] calculated statistically significant (at the 1% level) artificially inflated Levothyroxine prices from the onset of Defendants' communications in January 2013 through December 2018—the same end date Defendants asked Humana to stipulate to for its alleged damages. *See In re Generic Pharms. Pricing Antitrust Litig.*, No. 18-CV-3299, 2026 WL 2325239, at *5 (E.D. Pa. Aug. 11, 2026) ("for the collusion periods start and end dates, Dr. Vogt relied on Dr. Bradford's report, so the dates are not grounds for exclusion. Dr. Bradford's start dates stem from a permissible documentary review, and his selection of end dates followed from defense counsel's requested stipulation, which assures the Court of its reasonableness.").[7]

---

[6] Courts can rely on expert opinions to support a finding regarding admissibility of coconspirator statements under Rule 801(d)(2)(E) and Rule 104. *See In re Domestic Drywall Antitrust Litig.*, 163 F. Supp. 3d 175, 230 (E.D. Pa. 2016) ("the Court is within its discretion in citing and relying on the experts' opinions").

[7] Dr. Vogt's model also finds artificially inflated Levothyroxine prices (again, statistically significant at the 1% level)

## III. ARGUMENT

"Federal Rule of Evidence 801(d)(2)(E) provides that a statement by a party's coconspirator during and in furtherance of the conspiracy is not hearsay if it is offered against that party." *U.S. v. Turner*, 718 F.3d 226, 231 (3d Cir. 2013) (internal quotations omitted). "In order for an out-of-court statement to be admissible pursuant to Rule 801(d)(2)(E), the district court must find by a preponderance of the evidence that: (1) a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy." *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 375 (3d Cir. 2004) (internal quotations and citation omitted). In making these preliminary factual determinations, the Court may consider "any evidence it wishes, unhindered by considerations of admissibility." *Bourjaily v. U.S.*, 483 U.S. 171, 176-79 (1997); *see also* Fed. R. Evid. 104(a). "Both Third Circuit precedent and the Federal Rules of Evidence favor admissibility." *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, No. 15-cv-6480, 2022 WL 1036790, at *3 n.1 (E.D. Pa. Feb. 10, 2022) (denying defendant's motion in limine to exclude alleged co-conspirator statements); *Flat Glass*, 385 F.3d at 376 (in analyzing the co-conspirator exception, "the Federal Rules of Evidence are to be liberally construed in favor of admissibility") (internal quotations omitted).

### A. THE CONSPIRACY'S EXISTENCE

"[T]he quantity of evidence used to prove a conspiracy for purposes of admitting co-conspirator statements need not be great." *Winn-Dixie Stores, Inc.*, 2022 WL 1036790, at *3 n.1 (internal quotations and citation omitted). The Third Circuit has stated that the trial court's determination need only be supported by "slight" evidence. *See U.S. v. Provenzano*, 620 F.2d 985,

for a "lingering effects" period from January 1, 2019 through December 31, 2020. *See* Third Supplement to the February 27, 2026 Rebuttal Expert Report of Dr. William B. Vogt, Ph.D. at pp. 16-18 (Aug. 31, 2026).

999 (3d Cir. 1980) (internal quotations and citation omitted). Indeed, courts in the Eastern District of Pennsylvania find the existence of a conspiracy for purposes of Fed. R. Evid. 801(d)(2)(E) even when there are no "smoking guns" establishing the conspiracy. *See, e.g.*, *In re Domestic Drywall Antitrust Litig.*, 163 F. Supp. 3d 175, 230-31 (E.D. Pa. 2016).

Here, the Court has already found that the Levothyroxine conspiracy existed. *See, e.g.*, ECF No. 946 at 71 ("The Court finds that Humana has presented sufficient evidence such that a reasonable jury could infer that it is ***more likely than not*** that Mylan participated in a conspiracy regarding levothyroxine"), 69 ("Humana produced sufficient evidence to establish that Nesta shared this information and that there was a tacit agreement between Mylan and Sandoz not to sabotage one another with pricing information"), 70 ("[T]he evidence is sufficient to support a reasonable inference that Nesta . . . *obtained agreement that Lannett and Sandoz would follow*"), 72 (evidence supports "a *reasonable inference of Lannett's participation in a levothyroxine conspiracy*").

Thus, this foundational element under Fed. R. Evid. 801(d)(2)(E) should be deemed satisfied for each of the co-conspirator statements identified in the attached Appendix A, and for the statements outlined in Section III.D.1 below. *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1374 (3d Cir. 1992) ("Because [Plaintiffs] have proffered evidence to show concerted action in violation of the Sherman Act, they have demonstrated the requisite conspiracy for admissibility under Rule 801(d)(2)(E).").

### B. THE CONSPIRACY'S MEMBERS

In determining whether "the declarant and the party against whom the statement is offered were members of the conspiracy," courts can consider both the statement itself and independent evidence. *Flat Glass*, 385 F.3d at 375 (internal quotations and citations omitted). "Knowledge of all particular aspects, goals and participants of a conspiracy" is not necessary to establish a particular entity's involvement in a conspiracy. *U.S. v. Adams*, 759 F.2d 1099, 1114 (3d Cir. 1985) (citing

*Blumenthal v. U.S.*, 332 U.S. 539, 558 (1947)); *see In re Magnesium Oxide Antitrust Litig.*, No. 10-5943, 2011 WL 5008090, at *17 (D.N.J. Oct. 20, 2011) (a meeting of minds or a conscious commitment to a common scheme "does not require a showing that [the defendant] knew of or participated in every transaction in furtherance of or related to the alleged conspiracy") (collecting cases); *In re Mercedez-Benz Antitrust Litig.*, 157 F. Supp. 2d 355, 375 (D.N.J. 2001) ("[t]hat a particular defendant may or may not have joined in a specific act in furtherance of the conspiracy . . . does not affect its status as a conspirator.") (citations omitted).[8] Indeed, "[a]ntitrust law has never required identical motives among conspirators, and even reluctant participants have been held liable for conspiracy." *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 719 (E.D. Pa. 2011) (internal quotations and citations omitted).

Again, this Court has already determined that Mylan, Lannett and Sandoz participated in the conspiracy to fix prices of Levothyroxine. *See, e.g.*, ECF No. 946 at 71 ("The Court finds that Humana has presented sufficient evidence such that a reasonable jury could infer that it is ***more likely than not*** that Mylan participated in a conspiracy regarding levothyroxine"), 69 ("Humana produced sufficient evidence to establish that Nesta shared this information and that there was a tacit agreement between Mylan and Sandoz not to sabotage one another with pricing information"), 70 ("[T]he evidence is sufficient to support a reasonable inference that Nesta . . . obtained agreement that Lannett and Sandoz would follow"), 72 (evidence supports "a reasonable inference of Lannett's participation in a levothyroxine conspiracy").

Thus, this foundational element under Fed. R. Evid. 801(d)(2)(E) should be deemed satisfied

---

[8] That certain entities may have joined a conspiracy after its inception also does not alter the Rule 801(d)(2)(E) analysis. "'Many cases hold that a defendant who joins a conspiracy after it has been formed is responsible for statements made by existing co-conspirators prior to that defendant joining the conspiracy, assuming the prior statements were made during and in furtherance of the conspiracy.'" *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2019 WL 5656101, at *12 (E.D. Pa. Oct. 31, 2019) (quoting *U.S. v. Kemp*, 360 F. Supp. 2d 697, 703 (E.D. Pa. 2005)) (citation omitted).

for each of the co-conspirator statements identified in the attached Appendix A, and for the statements outlined in Section III.D.1 below.[9] *See Processed Egg Prods.*, 2019 WL 5656101, at *18-19 (finding this requirement satisfied where plaintiffs adduced evidence of the declarant and defendant entities' "knowing involvement in the conspiracy").

**C. THE CONSPIRACY'S COURSE**

To be admissible under Rule 801(d)(2)(E), a statement must have been made during the course of the conspiracy. *See U.S. v. Weaver*, 507 F.3d 178, 181 (3d Cir. 2007). "A conspiracy is presumed to continue until the objective is achieved." *U.S. v. Ammar*, 714 F.2d 238, 253 (3d Cir. 1983) (citation omitted); *see also U.S. v. Perlstein*, 126 F.2d 789, 798 (3d Cir. 1942) ("once a conspiracy is proved it must be deemed to continue until the contrary is established") (citations omitted); *U.S. v. Allen*, 492 Fed. Appx. 273, 277 (3d Cir. 2012) ("the defendant still may remain a part of the conspiracy if he or she continues to do acts in furtherance of the conspiracy and continues to receive benefits from the conspiracy's operations") (citation omitted); *U.S. v. Harriston*, 329 F.3d 779, 783 (11th Cir. 2003) ("A conspiracy is deemed to have continued as long as the purposes of the conspiracy have neither been abandoned nor accomplished and the defendant has not made an affirmative showing that the conspiracy was terminated") (citations omitted).

In its opinion denying Mylan's and Lannett's motions for summary judgment regarding Levothyroxine, this Court analyzed the conduct of Mylan, Lannett and Sandoz starting as early as mid-2012, when Mylan first began considering a Levothyroxine price increase, ECF No. 946 at 60, and continuing through at least July of 2014, when Lannett was forced to rescind its Levothyroxine price increase to one customer because it was not able to justify to the customer that its API price had increased. *Id.* at 66-67. At a minimum, the course of the Levothyroxine conspiracy continued

[9] "[T]he Court's ruling is one of admissibility of evidence only, and is not a ruling as to [the] sufficiency of Plaintiffs' evidence to prove liability as to any specific Defendant." *Domestic Drywall*, 163 F. Supp. 3d at 229.

during that time period. But, as discussed above, Humana's damages expert concluded that the conspiracy lasted through at least December 2018, if not longer. *See In re Generic Pharms. Pricing*, 2026 WL 2325239, at *5.

The statements Humana seeks to admit pursuant to the co-conspirator rule (identified in Appendix A, and in Section III.D.1 below) were all made during the conspiracy period, thus satisfying the rule's temporal requirement. *See, e.g., Processed Egg Prods.*, 2019 WL 5656101, at *19 (finding this requirement satisfied where the statements at issue were made during the alleged conspiracy period).

**D. STATEMENTS IN FURTHERANCE OF THE CONSPIRACY**

The first three elements under Rule 801(d)(2)(E) (existence, composition and duration) are foundational—as set forth above—and they have already been established as to Levothyroxine as a general matter. Therefore, when determining the admissibility of each specific statement subject to this Motion, the Court need only decide whether a particular statement was made in furtherance of the conspiracy.[10]

Rule 801(d)(2)(E)'s "in furtherance" requirement "is usually given a broad interpretation." *Weaver*, 507 F.3d at 183; *accord U.S. v. Duka*, 671 F.3d 329, 348 (3d Cir. 2011) ("The threshold for establishing that a statement was made in furtherance of a conspiracy is not high."). The following categories of statements, among others, are generally considered to satisfy the "in furtherance" requirement: (1) "statements prompting action that promotes the conspiracy", whether made to other conspiracy members or not, *Processed Egg Prods.*, 2019 WL 5656101, App'x to Mem. Re Co-Conspirator Statements, *In re Processed Egg Prods. Antitrust Litig.*, 2:08-md-2002 (E.D. Pa.), ECF No. 2034-1 at 1 (citation omitted), 33, 35; (2) statements "made to conduct the business of the

[10] Many of the out-of-court statements also are admissible on other grounds, including as business records, statements not offered to prove the truth of the matter asserted, and statements against interest. *See* Fed. R. Evid. 803(6); 801(c)(2); 804(b)(3).

conspiracy", *id.* at 29, 57, 59 (citation omitted), 68; (3) "statements of congratulations", if made to a member of the conspiracy, *id.* at 31 (citations omitted); (4) "[s]tatements of future intent that set transactions integral to the conspiracy in motion and maintain the information flow among coconspirators", *id.* at 40 (citation omitted); and (5) statements "prompt[ing] the listener to take action to preserve the conspiracy." *Id.* at 73.

"A coconspirator's statement may satisfy the 'in furtherance' requirement even if the statement was not 'exclusively, or even primarily, made to further the conspiracy.'" *U.S. v. Elder*, 840 F.3d 455, 459 (7th Cir. 2016) (quoting *U.S. v. Cruz-Rea*, 626 F.3d 929, 937 (7th Cir. 2010)). "Statements between conspirators which provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy further the ends of the conspiracy. . . ." *Weaver*, 507 F.3d at 182. And "statements made for the purpose of concealing a conspiracy can further the conspiracy regardless of whether the addressee is a co-conspirator." *Id.* at 186 ("Since it is clear that the purpose behind these statements was to conceal that scheme so it could continue, we conclude that they were made in furtherance of it.").[11]

The "ordinary 'information flow' by and among conspirators" also qualifies for admission so long as the flow advances the necessary goals of the conspiracy. *U.S. v. Rea*, 621 F.3d 595, 605 (7th Cir. 2010); *U.S. v. Iossifov*, 45 F.4th 899, 917 (6th Cir. 2022). Thus, it is clear that records necessary to the conspiracy's operation will qualify for admission under Rule 801(d)(2)(E). *U.S. v. Schmit*, 881 F.2d 608, 614 (9th Cir. 1989) (notations regarding payments, drug manufacturing formulas). Similarly, statements intended to "motivate a coconspirator's continued participation, or provide background information on key conspiracy members", will generally satisfy the "in furtherance"

[11] In addition, "[t]here is no requirement that the declarant be speaking from personal knowledge." *Flat Glass*, 385 F.3d at 375 n.33 (citing *U.S. v. Ammar*, 714 F.2d at 254; 5 Jack B. Weinstein et al., *Weinstein's Federal Evidence* § 801.23[2] (2d ed. 2003)); *see also U.S. v. Goins*, 11 F3d 441, 444 (4th Cir. 1993) ("[W]e join our sister circuits in holding that the personal knowledge requirement of Rule 602 does not apply to statements of a co-conspirator admissible as non-hearsay under Rule 801(d)(2)(E).").

requirement. *U.S. v. Miller*, 738 F.3d 361, 374 (D.C. Cir. 2013).

**1. Inter-Competitor Communications**

At trial, Humana will elicit testimony from Della Lubke, a former Director of National Accounts at Sandoz, regarding her communications with Jim Nesta, the Vice President of Sales at Mylan, about Levothyroxine and other drugs, as well as their collusive relationship generally. As this Court detailed in its summary judgment opinion, in July 2013 Ms. Lubke was asked by her supervisors and colleagues at Sandoz to obtain Mylan pricing information, so she called Jim Nesta. ECF No. 946 at 62. Ms. Lubke testified that she called Nesta because she "needed to know what price increases Mylan was taking on products so that [Sandoz] could follow." *Id.* at 63. "Nesta provided a list of drugs on which Mylan planned 'BIG' increases, including Levothyroxine." *Id.* "Lubke testified that she believed Nesta shared that information with her 'because of what I had said, that we were looking for a list of price increases so that we could follow.'" *Id.* Mylan subsequently did raise its prices for Levothyroxine in August 2013. *Id.* When a colleague at Sandoz reported internally on August 10, 2013 that "Mylan took a 300% price increase on Levothyroxine!!!," Lubke responded, "[t]his is correct based on my info as well." *Id.* at 64. And "Lubke testified that she got this information directly from Nesta (Mylan)." *Id.*

These statements, and others between Ms. Lubke and Jim Nesta cultivating the conspiratorial relationship, clearly satisfy the "in furtherance" requirement under Rule 801(d)(2)(E). *See Processed Egg Prods.*, 2019 WL 5656101, App'x to Mem. Re Co-Conspirator Statements, *In re Processed Egg Prods. Antitrust Litig.*, 08-md-2002 (E.D. Pa.), ECF No. 2034-1 at 40 ("[s]tatements of future intent that set transactions integral to the conspiracy in motion and maintain the information flow *among coconspirators* meets the 'in furtherance' requirement." (quoting *U.S. v. Roberts*, 14 F.3d 502, 515 (10th Cir. 1993)) (emphasis in original), 54 (statements "prompting action to promote the goal of increased prices" are in furtherance of conspiracy); *Weaver*, 507 F.3d at 182 ("Statements between

conspirators which provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy further the ends of the conspiracy"). Humana seeks a pretrial ruling that Ms. Lubke's statements regarding her communications with Jim Nesta are not hearsay and her testimony at trial on those matters is admissible under the co-conspirator rule.

**2. Internal Sandoz Communications**

To effectuate the Levothyroxine price fixing agreement, Sandoz employees engaged in a host of internal corporate communications in furtherance of the Levothyroxine conspiracy. Those categories of communication include, among others:

- ***Conveying, discussing and acting on market intelligence.*** These statements clearly satisfy the "in furtherance" requirement under Rule 801(d)(2)(E). *See Processed Egg Prods.*, 2019 WL 5656101, App'x to Mem. Re Co-Conspirator Statements, *In re Processed Egg Prods. Antitrust Litig.*, 08-md-2002 (E.D. Pa.), ECF No. 2034-1 at 40 ("[s]tatements of future intent that set transactions integral to the conspiracy in motion and maintain the information flow *among coconspirators* meets the 'in furtherance' requirement." (quoting *U.S. v. Roberts*, 14 F.3d 502, 515 (10th Cir. 1993)) (emphasis in original), 54 (statements "prompting action to promote the goal of increased prices" are in furtherance of conspiracy); *Weaver*, 507 F.3d at 182 ("Statements between conspirators which provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy further the ends of the conspiracy").

- ***Disguising the source of market intelligence.*** Statements that disguise the true source of the market intelligence being conveyed are an effort to conceal the conspiracy and are therefore "in furtherance" of that conspiracy. *Weaver*, 507 F.3d at 186 ("statements made for the purpose of concealing a conspiracy can further the conspiracy regardless of whether the addressee is a co-conspirator.").

- ***Congratulations for obtaining market intelligence.*** Congratulations are treated as "part of conspirators' efforts to 'inform each other as to the progress or status of the conspiracy'" and therefore satisfy the "in furtherance" requirement. *Processed Egg Prods.*, 2019 WL 5656101, App'x to Mem. Re Co-Conspirator Statements, *In re Processed Egg Prods. Antitrust Litig.*, 08-md-2002 (E.D. Pa.), ECF No. 2034-1 at 31 (quoting *U.S. v. Schlesinger*, 261 F. App'x 355, 358 (2d Cir. 2008); *Weaver*, 507 F.3d at 185 (other citations omitted).

- ***Planning and implementing price increases.*** Implementing price increases was one of the primary goals of the Levothyroxine conspiracy. Thus, statements evaluating, planning and implementing Levothyroxine price increases furthered the conspiracy. *Processed Egg Prods.*, 08-md-2002 (E.D. Pa.), ECF No. 2034-1 at 29 (statements

"made to conduct the business of the conspiracy" are in furtherance of the conspiracy).

- ***Keeping abreast of pricing and supply of co-conspirators.*** Efforts by Sandoz to keep informed of the actions of its co-conspirators in the market, and to discuss and analyze those actions, are "in furtherance" of the conspiracy to fix prices for Levothyroxine. *See Weaver*, 507 F.3d at 185 (statements explaining the current status of the conspiracy are admissible as non-hearsay co-conspirator statements) (citing *Ammar*, 714 F.2d at 252); *Processed Egg Prods.*, 2019 WL 5656101, App'x to Mem. Re Co-Conspirator Statements, *In re Processed Egg Prods. Antitrust Litig.*, 08-md-2002 (E.D. Pa.), ECF No. 2034-1 at 7 (statements updating members regarding improved egg prices were "in furtherance" of the conspiracy), 13 (statements informing coconspirators "of the status of the conspiracy" were in furtherance of it), 17 (same), 32 ("This statement can be in furtherance of the conspiracy because it informs the members of the status of the conspiracy, specifically how pricing changed"), 56 (statement was "in furtherance" of conspiracy "because it informs the members of the status of the conspiracy, specifically that supply is predicted to increase"), 58 (statements that "keep participants in the scheme 'abreast of developments'" can be in furtherance of conspiracy "even if not distributed") (citing *U.S. v. Gibbs*, 739 F.2d 838, 846 (3d Cir. 1984); *U.S. v. Cerone*, 830 F.2d 938, 949 (8th Cir. 1987)).

- ***Declining to compete for market share after a competitor's price increase.*** Avoiding competition after a competitor's price increase was one of the primary goals of the Levothyroxine conspiracy. Thus, statements analyzing customer offers and deciding not to provide a competitive bid are in furtherance of the Levothyroxine conspiracy. *Processed Egg Prods.*, 2019 WL 5656101, App'x to Mem. Re Co-Conspirator Statements, *In re Processed Egg Prods. Antitrust Litig.*, 08-md-2002 (E.D. Pa.), ECF No. 2034-1 at 29 (statements "made to conduct the business of the conspiracy" are in furtherance of the conspiracy); *Weaver*, 507 F.3d at 186 ("statements made for the purpose of concealing a conspiracy can further the conspiracy regardless of whether the addressee is a co-conspirator.").

- ***Evaluating whether to increase market share.*** Similarly, statements by Sandoz evaluating whether to increase its market share to make the market more balanced between the Levothyroxine coconspirators satisfy the "in furtherance" requirement. *Dahl v. Bain Cap. Partners, LLC*, 963 F. Supp. 2d 38, 49 (D. Mass. 2013) (statements made "to review, to interpret, and to devise strategy" satisfy the "in-furtherance" requirement).

- ***Assessing the impact of a price increase.*** Again, implementing price increases was one of the primary goals of the Levothyroxine conspiracy. Assessing the impact of a prospective or completed price increase therefore furthered the goals of the conspiracy. *Processed Egg Prods.*, 2019 WL 5656101, App'x to Mem. Re Co-Conspirator Statements, *In re Processed Egg Prods. Antitrust Litig.*, 08-md-2002 (E.D. Pa.), ECF No. 2034-1 at 29 (statements "made to conduct the business of the conspiracy" are in furtherance of the conspiracy); *U.S. v. Moran*, 493 F.3d 1002, 1010-11 (9th Cir. 2007) ("in-furtherance" requirement satisfied where document tracked financial transactions essential to the scheme, finding that "[i]n any

> conspiracy that involves complex financial transactions, it is in furtherance of the conspiracy to maintain a record of those transactions").

In Appendix A, Humana details—for each specific document subject to this Motion—the types and categories of statements in each document and the bases for admission of each. These types of internal corporate communications are routinely admitted under Fed. R. Evid. 801(d)(2)(E) as being "in furtherance" of the conspiracy, even if they were not circulated to other co-conspirators. *Domestic Drywall*, 163 F. Supp. 3d 175, 197, 228-31 (applying co-conspirator rule to "internal corporate communications"); *Processed Egg Prods.*, 2019 WL 5656101, App'x to Mem. Re Co-Conspirator Statements, *In re Processed Egg Prods. Antitrust Litig.*, 08-md-2002 (E.D. Pa.), ECF No. 2034-1 at 29 (internal email of one competitor "made to conduct the business of the conspiracy"); *U.S. v. Kaplan*, 832 F.2d 676, 687 (1st Cir. 1987) (internal files contributed to the objectives and ultimate success of the scheme, making them admissible against the defendant even though he had never seen them); *Dahl*, 963 F. Supp. 2d at 49-50 (internal communications of one defendant were "in furtherance" of conspiracy because they informed participants of coconspirators' activities and helped interpret those activities); *Moran*, 493 F.3d at 1010-11 ("in-furtherance" requirement satisfied where internal corporate documents tracked financial transactions essential to the scheme).

### 3. Other Statements Relating to Levothyroxine Prices, Profits, or Customers

In some of the documents identified in Appendix A, there are statements from third parties other than Sandoz, including customers (*e.g.*, requesting a bid after a competitor's price increase). Those statements are important for the jury to understand the overall context of the document but will not be offered specifically for their truth. Instead, they will be offered for a non-hearsay purpose, such as effect on listener. *U.S. v. Edwards*, 792 F.3d 355, 357 n.2 (3d Cir. 2015) (statements offered to show "effect on the listener" are not hearsay because they are not "offered for their truth"). Regardless, they should be included for completeness pursuant to Federal Rule of Evidence 106. *See*

*U.S. v. Johnson*, No. 1:21-cr-39-RJC-7, 2026 WL 2001915, at *16 (W.D. Pa. July 10, 2026) ("where completion is required under existing fairness standards, the 'completing statement' is now admissible over a hearsay objection") (citing Fed. R. Evid. 106 Advisory Committee's Note to 2023 Amendment).

Several of the emails identified in the attached Appendix A contain attachments like excel spreadsheets or PowerPoint presentations which include data regarding WAC pricing, non-public contract pricing, profitability, and other strategic information regarding Levothyroxine as well as other generic drugs. These records were kept by Sandoz in furtherance of the Levothyroxine conspiracy and are therefore admissible under Rule 801(d)(2)(E). *Processed Egg Prods.*, 2019 WL 5656101, App'x to Mem. Re Co-Conspirator Statements, *In re Processed Egg Prods. Antitrust Litig.*, 08-md-2002 (E.D. Pa.), ECF No. 2034-1 at 29 (statements "made to conduct the business of the conspiracy" are in furtherance of the conspiracy); *U.S. v. Moran*, 493 F.3d 1002, 1010-11 (9th Cir. 2007) ("in-furtherance" requirement satisfied where document tracked financial transactions essential to the scheme, finding that "[i]n any conspiracy that involves complex financial transactions, it is in furtherance of the conspiracy to maintain a record of those transactions"). To the extent such attachments include information regarding generic drugs other than Levothyroxine, such information should also be admitted under the rule of completeness. Fed. R. Evid. 106.

**4. Additional Statements**

At trial, Humana may seek to admit additional statements pursuant to the co-conspirator rule. Humana respectfully requests that the Court find at this juncture that, for any such statements, Humana has established the Levothyroxine conspiracy's existence, members and duration for purposes of the co-conspirator rule. Such a finding will streamline the presentation of evidence at trial by requiring the Court to determine only whether the statement at issue was made in furtherance of the conspiracy.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff Humana Inc. respectfully requests that the Court grant its Motion to Admit Coconspirator Statements relating to the Levothyroxine conspiracy against Mylan and Lannett pursuant to Fed. R. Evid. 801(d)(2)(E).

Dated: October 30, 2026

Respectfully submitted,

*/s/ W. Joseph Nielsen*
Peter D. St. Phillip, Jr.
W. Joseph Nielsen
Raymond P. Girnys
Noelle Ruggiero
Uriel Rabinovitz
Deborah Rogozinski
Alexis H. Castillo
Thomas Griffith
LOWEY DANNENBERG, P.C.
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel. (914) 997-0500
pstphillip@lowey.com
jnielsen@lowey.com
rgirnys@lowey.com
nruggiero@lowey.com
urabinovitz@lowey.com
drogozinski@lowey.com
acastillo@lowey.com
tgriffith@lowey.com

Matthew A. Cartwright
LOWEY DANNENBERG, P.C.
100 Front Street, Suite 520
West Conshohocken, PA 19428
mcartwright@lowey.com

Todd Schneider
J. Caleigh Macdonald
David D. Burnett
SCHNEIDER$^2$ WALLACE COTTRELL KIM LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel. 415-421-7100
tschneider@schneiderwallace.com
jmacdonald@schneiderwallace.com
dburnett@schneiderwallace.com

Jason H. Kim
SCHNEIDER$^2$ WALLACE COTTRELL KIM LLP

300 S. Grand Ave., Suite 2700
Los Angeles, CA 90071
Tel. 415-421-7100
jkim@schneiderwallace.com

*Counsel for Plaintiff Humana Inc*.

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on October 30, 2026, with a copy of this document via the Court's CM/ECF system.

Dated: October 30, 2026 *<u>/s/ Joseph Nielsen</u>*