**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724<br><br>No. 18-cv-3299<br><br>Hon. Cynthia M. Rufe |
| THIS DOCUMENT RELATES TO:<br><br>*Humana Inc. v. Actavis Elizabeth, LLC et al.* (18-cv-3299) | |

**HUMANA'S OBJECTIONS TO SPECIAL MASTER BIRCH'S SEPTEMBER 3, 2026 REPORT AND RECOMMENDATION DENYING HUMANA'S MOTION TO COMPEL MYLAN TO PRODUCE JAMES NESTA TO TESTIFY AT TRIAL**

## TABLE OF CONTENTS


I. Introduction ..... 1

II. Factual and Procedural Background ..... 3

A. The Motion, the Stay, and the Trial Subpoena. ..... 3

B. Mylan Continues to Pay for Mr. Nesta's Defense and Require His Cooperation. ..... 4

C. Mr. Nesta's Testimony and the Testimony Pitted Against It. ..... 5

D. The Errata. ..... 6

E. The Report and Recommendation. ..... 6

F. Judge Shea's October 16, 2026 Decision. ..... 7

G. Mylan's Contrary Position in Connecticut. ..... 8

III. Standard of Review ..... 8

IV. Argument ..... 8

A. Judge Shea's recent decision and Mylan's position in Connecticut regarding cooperating witnesses demonstrate that Mylan controls Mr. Nesta. ..... 8

B. The R&R's good-cause analysis does not account for the present record. ..... 10

C. The R&R's Rule 43(a) and 45(c) analysis rests on legal error. ..... 13

1. *Hightower* expressly declined to decide the Rule 43(a) question. ..... 13

2. The R&R ignores the Advisory Committee's Note to the 2013 amendment. ..... 14

D. Humana preserves its request that Mr. Nesta appear in person. ..... 15

V. Conclusion ..... 15

# TABLE OF AUTHORITIES

## Cases

*Connecticut v. Sandoz, Inc.*,
No. 3:20-cv-00802-MPS (D. Conn. Oct. 16, 2026) .......... 1, 2, 8
*Hightower v. Ingerman Mgmt. Co.*,
No. 17-08025, 2022 WL 19266260 (D.N.J. May 26, 2022) .......... 2, 7, 10, 14
*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
No. 3:19-MD-2885, 2021 WL 2605957 (N.D. Fla. May 28, 2021) .......... 3, 12, 13
*In re Kirkland*,
75 F.4th 1030 (9th Cir. 2023) .......... 3
*In re Urethane Antitrust Litig.*,
No. 2:08-5169, 2016 WL 723014 (D.N.J. Feb. 22, 2016) .......... 13
*In re Vioxx Prods. Liab. Litig.*,
439 F. Supp. 2d 640 (E.D. La. 2006) .......... 11, 13
*Johnson v. SmithKline Beecham Corp.*,
2025 WL 2233676 (E.D. Pa. Aug. 5, 2025) .......... 8
*Mullins v. Ethicon, Inc.*,
No. 2:12-cv-02952, 2017 WL 532102 (S.D. W. Va. Feb. 8, 2017) .......... 3, 11, 13
*Orbital Eng'g, Inc. v. Buchko*,
No. 2:20-593, 2022 WL 170043 (W.D. Pa. Jan. 19, 2022) .......... 14
*United States v. 4003-4005 5th Ave.*,
55 F.3d 78 (2d Cir. 1995) .......... 1, 8
*Walsh v. Tara Constr., Inc.,*
No. 19-cv-10369-AK, 2022 WL 1913340 (D. Mass. June 3, 2022) .......... 11, 14

## Rules

Fed. R. Civ. P. 32(a)(4) .......... 2, 8
Fed. R. Civ. P. 43 .......... 3, 10
Fed. R. Civ. P. 43(a) .......... passim
Fed. R. Civ. P. 45 .......... 14
Fed. R. Civ. P. 45(c) .......... 7, 13, 14, 15
Fed. R. Civ. P. 53(f)(1) .......... 8
Fed. R. Civ. P. 53(f)(3)-(4) .......... 1, 8

## I. INTRODUCTION

Humana Inc. ("Humana") respectfully objects to Special Master Birch's Report and Recommendation denying Humana's motion to compel Mylan to produce James Nesta to testify live at the *Humana I* bellwether trial ("R&R").[1] The R&R rests on two factual premises that the intervening record no longer supports—and of which Special Master Birch did not have the benefit—and on two separate errors of law. This Court should review the R&R *de novo*. Fed. R. Civ. P. 53(f)(3)-(4).[2]

*First*, the R&R's "control" finding, that Mr. Nesta is "a former employee … whom Mylan can[not] be presumed to control," R&R at 9, no longer matches the record. Six weeks after the R&R, Judge Shea in Connecticut—reviewing Mr. Nesta's testimony, the timing of his withdrawal of the Fifth Amendment, and Mylan's "referr[al]" of his counsel and payment of his legal fees—concluded that Mylan's conduct vis-à-vis Nesta "appears to be part of a manipulative, 'cat-and-mouse approach' to the litigation … *in which Mylan is pulling the strings*."[3] Judge Shea further found that the timing of Nesta's decision to begin testifying substantively, without the Fifth Amendment shield, "strongly suggests" it "stemmed from a desire to give Mylan a litigation advantage" and that "*Mylan has substantial ability to control [Nesta's] decision*."[4] Judge Shea also declined to treat Mr. Nesta's live trial testimony as unavailable—instead reserving until after a November 12 pretrial conference the same issue currently before this Court—*i.e.*, whether to "require Mylan to produce [Nesta] for live testimony."[5]

Mylan's recent admission (made after the R&R was issued) further confirms that it controls Mr. Nesta via the "cooperation" clause in his separation agreement. Three days before Judge Shea's Order, Mylan informed the Connecticut court that a witness with a cooperation agreement (like Nesta)

---

[1] MDL ECF 4993

[2] Humana does not restate the full argument of its Motion and Reply, which remain before the Court and are incorporated by reference. *See* ECF 4961 (Motion); ECF 4974 (18-cv-3299, ECF 951) (Reply).

[3] *Connecticut v. Sandoz, Inc.*, No. 3:20-cv-00802-MPS (D. Conn. Oct. 16, 2026), ECF No. 1572, at 10 (emphasis added) (quoting *United States v. 4003-4005 5th Ave.*, 55 F.3d 78, 85 (2d Cir. 1995)) (the "Shea Opinion"). Judge Shea found that "the Second Circuit's 'cat-and-mouse' description fits Mylan's approach here." *Id.* at 7.

[4] Shea Opinion at 7-10 (emphasis added).

[5] Shea Opinion at 11; *see id.* at 12 ("I will decide whether to require live testimony … after the November 12 pretrial conference"). Judge Shea did not hold that such an order may issue; he reserved the question. Humana notes the reservation because the R&R treated the remedy as unavailable as a matter of law. R&R at 5.

"would require his trial attendance if called" and is "therefore not unavailable" under Rule 32(a)(4).[6] Mylan has explicitly conceded that it has the ability to bring Mr. Nesta to testify at trial; and that if it does not bring him, it should be precluded from even using his deposition. And Mr. Nesta himself testified he would attend Humana's trial "[i]f I was available."[7]

Mr. Nesta's errata that Mylan served while Humana's motion was pending similarly bears Mylan's string-pulling fingerprints. A month after his July 2026 deposition, *days before* Mylan filed its opposition, Mr. Nesta's errata altered his sworn testimony *twenty-seven times*—substituting "price-fixing" for the words he actually used—so that his answers track his scripted denial of "price fixing. [8] Nesta's post-facto testimony-by-errata seeks to whitewash his real answers with his robotic recitation of never having engaged in "price-fixing."[9] Nesta's errata is yet another attempt to "give Mylan a litigation advantage[.]"[10] And the last time an errata bore Mr. Nesta's signature, he testified that its changes "*did not come from me*."[11] Nesta must testify in-person at trial to address these discrepancies.

*Second*, the R&R's denial of Humana's alternate request for relief—live remote testimony under Rule 43(a)—rests on two clear errors of law. *One*, it treats *Hightower* as controlling Third Circuit authority foreclosing relief under Rule 43(a) when it does not.[12] *Hightower* is not precedential, and the "end-run" language the R&R quotes is the court's recitation of the appellant's argument—to which the court appended a footnote stating that it "need not address the merits of Lightman's argument

---

[6] *See* Defendants' Notice Regarding Expert Testimony of Dr. Bonnie Levin, at 1 & n.1, *Connecticut v. Sandoz, Inc.*, No. 3:20-cv-00802-MPS (D. Conn. Oct. 13, 2026), ECF No. 1560 (the "Mylan Notice") (concerning Anthony Thomassey).

[7] Nesta Tr., July 21, 2026, (Nielsen Decl. Ex. 2, MDL ECF No. 4961-3) at 18:24-19:2 ("Q. Would you be willing to attend that trial in person if you were asked by the plaintiff in that case to attend and testify? A. If I was available."); *see id.* at 18:9-11 ("Q. Are you intending to -- are you planning to attend that trial in person? A. No.").

[8] S*ee* Motion at 6 (MDL ECF No. 4961), discussing "his continuously repeated formulaic answer to every question about his conversations with competitors"; *see also* Nielsen Decl. Ex. 3 (Nesta Tr. July 22, 2026) at 542:22-546:16 (MDL ECF 868-1), where Nesta denies all memory but consistently "remembers" not forming pricing or market allocation agreements. *Id.* at 543:11-14 ("Don't remember the phone conversations but what I do know is never had an agreement around pricing or market allocation with a competitor.") *See also* Nesta Tr. July 21, 2026 at 137:13-138:6; 276:23-277:4 (ECF 868-1).

[9] *See* Errata of James Nesta re July 21–22, 2026 Deposition (Aug. 20, 2026), filed publicly as Appendix 1 to Humana's Reply, MDL ECF No. 4974 (18-cv-3299, ECF No. 951), at 1–2; see infra § II.D.

[10] Shea Opinion at 7.

[11] Nesta Tr., July 21, 2026, (Nielsen Decl. Ex. 2, MDL ECF No. 4961-3) at 42:1-6, 42:17-21, 43:1-4, 43:15-20, 44:16-20. The January 6, 2026 errata was marked as Exhibit 13493. *Id.* at 42:10-15.

[12] *Hightower v. Ingerman Mgmt. Co.*, No. 17-08025, 2022 WL 19266260 (D.N.J. May 26, 2022) ("*Hightower*").

regarding Rule 43." *Two*, the R&R gives *In re Kirkland*,[13] a Ninth Circuit decision, the practical force of binding precedent on a question this Circuit has left open and on which the district courts are divided.

Mr. Nesta's credibility, and his pretextual denials that he never discussed price increases with any competitors,[14] are at the center of Humana's narrowly targeted liability case. The R&R itself identifies six witnesses who "indicated they had competitively sensitive conversations with Nesta."[15] Pitted against Mr. Nesta at trial will be Della Lubke, Mr. Nesta's counterpart at Sandoz, who testified that Nesta told her Mylan was raising the price of Levothyroxine (and other drugs) so Sandoz could follow. Mr. Nesta denies it. That dispute should be resolved by a live witness testifying "in open court," Fed. R. Civ. P. 43(a),[16] not by a recording that no longer matches the "corrected" transcript. The Court should therefore order Mylan to produce Mr. Nesta at the Humana trial—in person or, alternatively, by contemporaneous transmission from a location within 100 miles of his residence.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Motion, the Stay, and the Trial Subpoena.

Humana moved to compel Mylan to produce Mr. Nesta to testify at trial on August 14, 2026, ECF 4875, and filed a corrected motion on August 17, 2026, ECF 4961 (the "Motion"). The Court referred the Motion to Special Master Birch on August 18, 2026. ECF 4901. Mylan opposed on August 25, 2026, ECF 4978, and Humana replied on August 28, 2026. ECF 4974 (18-cv-3299, ECF 951).

On September 2, 2026, the Court granted Mylan's motion for a continuance of the pre-trial conference, stayed all outstanding *Humana I* pre-trial deadlines "up to a period of forty-five (45) days, or until such other time as the Court determines," and continued the September 15, 2026 trial date.[17]

---

[13] *In re Kirkland*, 75 F.4th 1030 (9th Cir. 2023) ("*Kirkland*").
[14] Some of which were by errata after his deposition was closed and are now discordant with the videotaped testimony.
[15] R&R at 2 (identifying Della Lubke, Anthony Thomassey, Kevin Green, Nisha Patel, Tony Polman, and Tim Gustafson).
[16] *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-MD-2885, 2021 WL 2605957, at *4-5 (N.D. Fla. May 28, 2021) (good cause shown where a party would be prejudiced "if he does not have the opportunity to question [the witness] live before the jury"); *Mullins v. Ethicon, Inc.*, No. 2:12-cv-02952, 2017 WL 532102, at *4 (S.D. W. Va. Feb. 8, 2017) (contemporaneous testimony "will promote coherency, especially when the alternative is spliced, edited, and recompiled clips of depositions that took place over multiple days").
[17] ECF 4989 (18-cv-3299, ECF 964) ¶¶ 3-4.

Humana has not served a trial subpoena on Mr. Nesta but intends to serve a trial subpoena promptly once a trial date is set. The R&R preserves Humana's right to do so. R&R ¶ 2.

**B. Mylan Continues to Pay for Mr. Nesta's Defense and Require His Cooperation.**

Mylan's relationship with Mr. Nesta is ongoing. Mylan describes the continuing arrangement as "[p]ost-termination payment of severance and a limited cooperation provision based on payment of legal fees that survives termination of employment."[18] Mr. Nesta also must cooperate with Mylan and provide "good faith assistance" in response to Mylan's requests for "information *or testimony*."[19]

Mylan contends that the Court cannot require it to bring Mr. Nesta to Philadelphia for trial. But the record shows that Mylan exercises substantial control over Nesta. Mylan referred Mr. Nesta to his counsel at Cozen O'Connor. Mylan pays that firm's bills. Mr. Nesta has already traveled from his North Carolina home to Mylan's counsel's office in Washington, D.C. for multiple depositions.[20] Hanging over him is the threat of punishing counsel fees and pecuniary penalties if he does not cooperate. Mr. Nesta testified that he understood Mylan "would pay for my lawyers' expenses, and if [I] do[]n't cooperate … in any way, that I would have to pay for legal fees." He does not know the size of that exposure. He has "no idea" what Mylan has paid, "no clue" whether it exceeds a million dollars, and "no idea what kind of money I would have to pay Mylan."[21]

Mylan continues to make severance payments to Mr. Nesta. The cooperation provision, by Mylan's own description, survives termination of employment—and the record demonstrates it remains operative.

---

[18] Opp. at 4 (ECF 4978) (describing "[p]ost-termination payment of severance and a limited cooperation provision based on payment of legal fees that survives termination of employment"; Mr. Nesta "separated from employment no later than December 31, 2025"); *see* Nielsen Decl. Ex. 4 (PX12623, MYLGP0011342535) (Transition and Separation Agreement and Release).

[19] R&R at 2 (quoting Nesta's Transition and Separation Agreement and Release, Mot. Ex. 4, ¶ 12); 12 (MDL ECF No. 4961-5)); *see* Reply at 7 n.10 (ECF 4974) (identifying Nielsen Decl. Ex. 4 (MDL ECF No. 4961-5) (PX12623, MYLGP0011342535), at 8–9, ¶ 12) (emphasis added).

[20] Mot. at 4 (MDL ECF No. 4961) (Mr. Nesta "traveled from his home in North Carolina to Washington, D.C. to sit for a multi-day deposition in this case just weeks ago").

[21] Nesta Tr., Nov. 19, 2025 (Nielsen Decl. Ex. 1, MDL ECF No. 4961-2) at 26:19-20, 27:5-10 (Mr. Nesta understood that Mylan "would pay for my lawyers expenses, and if [I] do[]n't cooperate … in any way, that I would have to pay for legal fees"); *id.* at 27:19-21, 29:8-9 ("no idea" how much Mylan has paid his counsel, "no clue" whether the amount exceeds a million dollars, and "no idea what kind of money I would have to pay Mylan"); *see* Mot. at 3 (ECF 4961).

**C. Mr. Nesta's Testimony and the Testimony Pitted Against It.**

Mr. Nesta has been deposed three times in this litigation. He invoked the Fifth Amendment as to all substantive questions in 2022 but revoked his Fifth Amendment invocation to testify in November 2025 (but only as to Clomipramine). In July 2026, Mr. Nesta gave general testimony over two days to support Mylan's litigation position in advance of the *Humana I* bellwether trial.[22] When asked whether he planned to attend the *Humana I* trial, he initially answered "No"; but when asked whether he would attend if a plaintiff asked him to, he answered, "[i]f I was available."[23]

Pitted against Mr. Nesta's testimony will be that of Della Lubke, his former counterpart at Sandoz, who recalled that "every call I had with Mr. Nesta had to do with competitive information."[24] Ms. Lubke testified that she telephoned Mr. Nesta on July 16, 2013 because she "needed to know what prices that Mylan was going to take an increase on so that Sandoz could follow."[25] Pressed by Sandoz's counsel on whether the information she then reported to her colleagues (a list of drugs, including Levothyroxine) might instead have come from customers, she testified recalling that this information from Jim Nesta.[26] As to Levothyroxine, she testified that Nesta told her Lannett followed a price increase and that Mylan's price increases were going to be substantial. When asked directly whether Nesta had told her Mylan took a Levothyroxine price increase that Lannett followed, she answered, he had told her that. *Id.*

Confronted with the same calls, Mr. Nesta testified that he did not remember them and that he "would never do that in terms of providing any information to a competitor in terms of anticompetitive information, price increases, sharing of markets, or any type of agreement with Ms.

---

[22] Nesta Tr., July 21, 2026, (Nielsen Decl. Ex. 2, MDL ECF No. 4961-3) at 19:6-16 (first deposition in 2022, at which Mr. Nesta "asserted the Fifth Amendment in response to all substantive questions"; November 2025 deposition limited to clomipramine).

[23] Nesta Tr., July 21, 2026, (Nielsen Decl. Ex. 2, MDL ECF No. 4961-3) at 18:9-11 ("Q. Are you intending to -- are you planning to attend that trial in person? A. No."); *id.* at 18:24-19:2 ("Q. Would you be willing to attend that trial in person if you were asked by the plaintiff in that case to attend and testify? A. If I was available.").

[24] Deposition of Della Lubke, Vol. III (May 19, 2023) 645:18-22.

[25] *See* MDL ECF 4486 (Humana's Omnibus Opposition to Defendants' Motions for Summary Judgment) at 176, fn. 1129.

[26] *Id.* at 176-177, including footnotes 1128-1133.

Lubke." When asked whether he told Ms. Lubke the price increases would be big, he answered: "No, I did not."[27]

### D. The Errata.

On January 6, 2026, plaintiffs' counsel received an "Errata of Deponent James Nesta," purportedly bearing his signature, listing changes to his November 19, 2025 deposition. When shown the document at his July 2026 deposition, however, Mr. Nesta testified that he had never read the underlying transcript. Nesta confirmed that although the errata "says I signed it," he did "not remember signing the document." When asked whether the listed changes came from him, Nesta testified that "[t]hose changes did not come from me."[28]

On August 20, 2026, while Humana's Motion was pending, Mr. Nesta served an errata for his July 2026 deposition. It contains twenty-six entries designated "Correction," each substituting "price-fixing" for the actual words he testified to under oath at deposition.[29] Sixteen so-called "corrections" replace the term "price increases"; one replaces "increase prices"; and nine replace "pricing."[30] Not one of the twenty-six is designated a transcription error. A twenty-seventh change introduces the same phrase under a "Transcription Error" label.[31]

### E. The Report and Recommendation.

Special Master Birch filed her R&R on September 3, 2026, the day after Humana indicated it did not accept her informal R&R. ECF 4993. The R&R's reasons are as follows. A Rule 45 subpoena runs to a natural person, not to a corporation, so the Court cannot order Mylan to produce a non-party. R&R at 5. Mr. Nesta is "a former employee, not a current officer or employee whom Mylan can

---

[27] Nesta Tr., July 21, 2026 (Nielsen Decl. Ex. 2, MDL ECF No. 4961-3) at 449:12-16, 449:18-25, 450:1-11; *see id.* at 466:12-15 (no "reason to doubt" the calls occurred, but no memory of them), 468:24-469:1 (no recollection whether Levothyroxine appeared on Ms. Lubke's list).

[28] *Id.* at 42:1-6, 42:17-21, 43:1-4, 43:15-20, 44:16-20. The January 6, 2026 errata was marked Exhibit 13493. *Id.* at 42:10-15.

[29] Appendix 1 (Errata) at 1–2, previously filed with Humana's Reply, MDL ECF No. 4974 (18-cv-3299, ECF No. 951).

[30] The errata converts "price increases" to "price-fixing" at 138:6, 138:15, 149:23-24, 168:14-15, 189:16-17, 196:18-19, 240:5, 277:3, 392:24-25, 401:22-23, 434:3, 435:16, 449:15, 450:3, 540:21, and 784:15; "increase prices" to "price-fixing" at 238:5; and "pricing" to "price-fixing" at 501:22, 503:4, 582:20, 613:7, 616:14, 646:12, 770:24, 804:15, and 836:8. Appendix 1 (Errata) at 1–2, MDL ECF No. 4974.

[31] One further entry designated "Transcription Error" rather than "Correction," also introduces the phrase: Appendix 1 at 2 (changing "pricing, or aggregating [sic]" to "price-fixing or allocating" at 845:11). A second "Transcription Error" entry changes "contractually" to "criminally" at 899:5, and eleven more change formulations such as "agreement or" and "agreements," to "agreement on" and "agreements on." Appendix 1 (Errata) at 1–2, MDL ECF No. 4974.

be presumed to control," and his cooperation covenant and Mylan's payment of his fees are "standard incidents of a separation." *Id.* at 6, 8. Rule 43(a)'s good-cause standard is narrow, "reserv[ed] … for 'unexpected reasons, such as accident or illness,'"[32] and Humana in any event "has extensive deposition testimony available for use at trial." *Id.* at 8. Finally, the R&R misreads *Hightower* as having "reached a consistent result," describing the use of Rule 43(a) "as an 'end-run' around Rule 45(c)," and treats out-of-Circuit *Kirkland* as resolving the place-of-compliance question. *Id.*

The R&R recommends that the Motion be denied, R&R ¶ 1, but preserves "Humana's issuance of a trial subpoena to Nesta" and the "use of Nesta's deposition testimony at trial, including video excerpts." *Id.* ¶ 2. The R&R also tolls the deadline for objections until the stay expires. *Id.* ¶ 3.

**F. Judge Shea's October 16, 2026 Decision.**

Six weeks after the R&R, Judge Shea addressed Mr. Nesta's withdrawal of his Fifth Amendment invocation.[33] He found that Mylan and Mr. Nesta could not "even attempt to point to any development … that would explain why the witnesses [Nesta and Michael Aigner] agreed to withdraw their assertions of the privilege" other than "the progression of litigation against Mylan," and noted Mylan's confirmation that "the witnesses have now agreed to testify because the *Humana I* trial is approaching." He continued:

> And there is evidence that Mylan has substantial ability to control the witnesses' decision as to whether and when to drop their Fifth Amendment shields to provide substantive testimony. *See, e.g.*, ECF No. 1421-4 at 7-8, 11-13 (Nesta testifying at Clomipramine deposition that Mylan had "referred" him to his counsel; that Mylan "has … represented [him] working with [his counsel]"; that Mylan is paying his attorney's fees; that he signed an agreement to "represent my company"; that if he fails to "cooperate or do the right thing" or "lie[s] in any way," he will be required to repay the legal fees; and that Mylan will indemnify him unless the law requires otherwise).[34]

Judge Shea found that the timing "strongly suggests these decisions stemmed from a desire to give Mylan a litigation advantage, rather than from any change in the prospect of criminal

---

[32] R&R at 4 (quoting *Hightower*, 2022 WL 19266260, at *3).
[33] Shea Opinion at 7-10.
[34] Shea Opinion at 9. Judge Shea permitted Mylan to use the witnesses' 2026 deposition testimony, but imposed remedial measures, including admission of the witnesses' prior Fifth Amendment invocations at trial with an adverse-inference instruction. *Id.* at 7, 10-11. His findings are not binding on this Court and were made on a different motion. Humana offers them as evidence of the nature of Mylan's relationship with this witness, developed in material part on the same deposition testimony Humana placed before the Special Master.

prosecution," and that the conduct "appears to be part of a manipulative, 'cat-and-mouse approach' to the litigation … in which Mylan is pulling the strings."[35] He declined to treat live testimony as unavailable, and expressly reserved the question of "whether to … require Mylan to produce [Nesta] for live testimony" until after a November 12 pretrial conference.[36]

### G. Mylan's Contrary Position in Connecticut.

Three days before Judge Shea's decision, Mylan joined a notice advising the District of Connecticut court that it would move to exclude the State AGs' use of a cooperating witness's deposition testimony at trial "because he has entered into a cooperation agreement with Plaintiffs that he understood would require his trial attendance if called by the Plaintiffs, and is therefore not unavailable within the meaning of Fed. R. Civ. P. 32(a)(4)."[37]

## III. STANDARD OF REVIEW

On review of an R&R, the Court "may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit [the matter] to the master with instructions," and "may receive evidence" in doing so. Fed. R. Civ. P. 53(f)(1). The Court "must decide *de novo* all objections to findings of fact made or recommended by a master," Fed. R. Civ. P. 53(f)(3), and "must decide *de novo* all objections to conclusions of law made or recommended by a master," Fed. R. Civ. P. 53(f)(4). This Court's own orders are to the same effect. *See* PTO 49 at 3 (ECF 667); PTO 163 ¶ 2 (ECF 1707). On *de novo* review the Court decides the objected-to matters independently. *See Johnson v. SmithKline Beecham Corp.*, 2025 WL 2233676, at *4 (E.D. Pa. Aug. 5, 2025).

## IV. ARGUMENT

### A. Judge Shea's recent decision and Mylan's position in Connecticut regarding cooperating witnesses demonstrate that Mylan controls Mr. Nesta.

There is ample evidence that Mylan exercises control over Mr. Nesta. Nesta admitted that Mylan referred him to counsel, pays his counsel's bills, and will indemnify him—but only if he

[35] Shea Opinion at 7, 10 (quoting *United States v. 4003-4005 5th Ave.*, 55 F.3d 78, 85 (2d Cir. 1995)).
[36] Shea Opinion at 11; *see id.* at 12 ("I will decide whether to require live testimony … after the November 12 pretrial conference").
[37] Defendants' Notice Regarding Expert Testimony of Dr. Bonnie Levin, *Connecticut v. Sandoz, Inc.*, No. 3:20-cv-00802-MPS (D. Conn. Oct. 13, 2026), ECF No. 1560, at 1. The notice is signed on behalf of "Defendants Mylan Inc. and Mylan Pharmaceuticals Inc." by attorneys at Hogan Lovells Cadwalader US LLP and Wiggin and Dana LLP. *Id.* at 3.

continues to cooperate. If Nesta does not cooperate with Mylan, he is responsible for potentially millions of dollars in attorneys' fees, plus potential judgments against him personally.[38] Nesta testified that Mylan "has . . . represented [him] working with [his counsel]" and that he signed an agreement to "represent my company."[39] Consistent with control, Nesta has traveled several times to the offices of *Mylan's counsel* in Washington, D.C. (not his own personal counsel in Philadelphia) to prepare for and attend depositions.[40] Nesta even testified that during the period of his separation agreement with Mylan, he could not recall performing any substantive "business-related" tasks for Mylan—but did spend potentially "months" of time working with Mylan's lawyers to defend this litigation, all while being paid handsomely.[41] And Mylan's control does not end when Mr. Nesta's severance payments stop. Mylan has stated that the cooperation provision survives termination of employment, and the record supplies no end date for it. If Mylan extends or renews its arrangements with Mr. Nesta, that further confirms Mylan's continuing control.

Based on many of these same facts, Judge Shea found that Mylan has been controlling Nesta's decisions throughout this litigation. For example, Judge Shea found that the timing of Nesta's decisions to invoke and withdraw the Fifth Amendment "strongly suggest" those "decisions stemmed from a desire to give Mylan a litigation advantage" and "appear[] to be part of a manipulative, 'cat-and-mouse approach" to the litigation . . . *in which Mylan is pulling the strings*."[42] This led Judge Shea to conclude that "Mylan has substantial ability to control [Nesta's] decision[s]."[43] Based on these findings, Judge Shea declined to rule out what Humana is requesting here—requiring Mylan to produce Nesta live at trial.[44]

Mylan's statements also now contradict its position here. In Connecticut, Mylan has taken the position that if a witness entered into a cooperation agreement that he understood would require trial

[38] Shea Opinion at 9 ("if he fails to 'cooperate or do the right thing' or 'lie[s] in any way,' he will be required to pay the legal fees").
[39] Shea Opinion at 9.
[40] Mot. at 8 (ECF 4961) (Mr. Nesta "traveled from his home in North Carolina to Washington, D.C. to sit for a multi-day deposition in this case just weeks ago").
[41] Nesta Tr., Nov. 19, 2025 (Nielsen Decl. Ex. 1, MDL ECF No. 4961-2) at 61:17-64:22.
[42] Shea Opinion at 7, 10.
[43] Shea Opinion at 9.
[44] Shea Opinion at 11-12.

attendance if called (like Nesta), that witness must be called live at trial and if the party he agreed to cooperate with chooses not to call him live, then it should be precluded from introducing his deposition at trial because the witness is "not unavailable within the meaning of Fed. R. Civ. P. 32(a)(4)." The premise of Mylan's filing is that a party's cooperation agreement requiring trial attendance establishes control over the witness bound by it.[45]

Special Master Birch did not have access to either of these filings when she issued the R&R. The R&R treated Mr. Nesta's cooperation covenant and Mylan's payment of his counsel fees as just "standard incidents of separation." R&R at 6. But Judge Shea disagrees, and even Mylan does not regard such obligations as standard when the argument runs the other way.[46] For all these reasons, this Court should find that Mylan has control over Mr. Nesta and require Mylan to bring him live to trial.

**B. The R&R's good-cause analysis does not account for the present record.**

Rule 43(a) permits testimony by contemporaneous transmission "[f]or good cause in compelling circumstances and with appropriate safeguards." The R&R found that courts have "generally interpreted this provision narrowly, reserving remote testimony for 'unexpected reasons, such as accident or illness.'" R&R at 4. But the authority on which that reading rests quotes the Advisory Committee Note in comparative terms: the "most persuasive showings" of good cause "are likely to arise" when a witness cannot attend "for unexpected reasons, such as accident or illness."[47] That identifies the strongest case; not the only one. The courts applying the Rule have not treated it as exclusive. *See Walsh v. Tara Constr., Inc., No. 19-cv-10369-AK, 2022 WL 1913340, at *1-2 (D. Mass. June 3, 2022)*, *In re 3M*, 2021 WL 2605957, at *4-5; *Mullins v. Ethicon, Inc.*, No. 2:12-cv-02952, 2017 WL 532102, at *4 (S.D. W. Va. Feb. 8, 2017).

---

[45] At a minimum, this Court should hold Mylan to its position in Connecticut. Either Mylan calls Nesta to testify live at trial, or Mylan should not be permitted to rely on his deposition at trial because he is not "unavailable" to Mylan.

[46] The agreements are not identical (indeed, Thomassey does not have any written cooperation agreement with the Plaintiffs in this case), and Humana does not contend otherwise: Mylan may say that Thomassey understood his agreement to require trial attendance, while Mr. Nesta's covenant speaks of cooperation and assistance. The point is narrower. Mylan itself treats a post-employment cooperation obligation as bearing on a witness's practical availability for trial. Mr. Nesta's covenant obliges him to provide "good faith assistance" in response to requests for "information *or testimony*," while Mylan funds his counsel and may recover those fees if he does not "cooperate." Opp. at 4 (ECF 4978).

[47] *Hightower*, 2022 WL 19266260, at *3 (quoting Fed. R. Civ. P. 43 advisory committee's note to 1996 amendment). The R&R cites the same page of *Hightower* for its narrower formulation. R&R at 4.

As set forth in *In re Vioxx Products Liability Litigation*, whether compelling circumstances warrant contemporaneous transmission of trial testimony depends on, among other things, the "control exerted over the witness by the defendant."[48] Mylan's stranglehold on Mr. Nesta, via a cooperation covenant it concedes "survives termination of employment," secured by an open-ended legal-fee exposure he cannot fathom or measure, coupled with Judge Shea's finding of Mylan's control over Mr. Nesta, demonstrates the requisite showing of good cause. *See In re Vioxx Prods. Liab. Litig.*, 439 F. Supp. 2d 640, 644 (E.D. La. 2006) (granting motion to compel appearance of witness).

In rejecting Humana's claim for good cause, the R&R relied heavily on the premise that "Humana has extensive deposition testimony available for use at trial." R&R at 8. The problem, however, is not the quantity of the testimony—it is which version of that testimony is actually Mr. Nesta's. The errata's substitutions are not cosmetic. For example, when asked about Kevin Green's testimony that he spoke to Nesta "about pricing on products where Mylan and Teva competed," Mr. Nesta called Green "mistaken" and testified: "I didn't speak to him about pricing increases or allocation of markets or any agreements." Nesta Tr., July 21, 2026, at 138:6-8; *see id.* at 137:13-15, 137:24. Pressed again, he repeated that he "never spoke to him about price increases, allocation of markets, or any agreements between Teva and Mylan." *Id.* at 138:14-16. Nesta's errata, however, subsequently changed "price increases" in both answers to "price-fixing"[49]—which fundamentally alters the meaning of his answers.

The substitution appears again in Mr. Nesta's interactions with Della Lubke—which are of primary importance to the *Humana I* trial. Ms. Lubke did not testify that Mr. Nesta proposed a formal agreement to fix prices; she testified that Nesta gave her price increase information about Levothyroxine (and other drugs) so that Sandoz could follow those price increases. The denials that address her testimony are Mr. Nesta's denials of discussing "price increases" with her—which are the

[48] Reply at 5-7 (ECF 4974) ("the record demonstrates a continuing contractual and litigation relationship between Mylan and Nesta that is far more controlling than a mere employment relationship"); *see In re Vioxx Prods. Liab. Litig.*, 439 F. Supp. 2d 640, 643 (E.D. La. 2006) (the factor is "control exerted over the witness by the defendant").
[49] Appendix 1 at 1 (138:6 and 138:15).

precise denials the errata removes, in both of the answers in which he was confronted with her calls.[50] Nesta must be examined in front of the jury to address these discrepancies.

That pattern recurs throughout Mr. Nesta's deposition. He responded to questions about competitor communications by stating that he did not recall a particular conversation, but then categorically denied any discussion of price increases, market allocation, or agreements. One cannot have no recollection of a conversation while still having a perfect recall of what was *not* discussed. Mr. Nesta's testimony is not only incredible, but with the errata changes it is no longer even his own words. The *Humana I* jury deserves to assess Mr. Nesta's credibility live. The errata leaves Mr. Nesta's lack of recollection untouched but fundamentally changes the denial—replacing a denial about the subject of the conversation ("price increases") with one directed at the ultimate legal conclusion regarding the conduct ("price fixing"). The former can be tested against calls, calendars, documents, and the testimony of the other participants. The latter instead turns the inquiry into a dispute over what the conduct legally amounted to. And because an errata only changes the written transcript, the video still records the words Mr. Nesta *actually spoke*—which are now discordant with his re-writing of the transcript. Played to a jury, the recording and the corrected transcript will not match. As such, Mr. Nesta's post-facto testimony-by-errata invites juror confusion that live testimony would avoid.

Further, Mr. Nesta's ever "evolving" testimony was materially changed *after the deposition closed*, without any opportunity to question him about those alterations. That is the perfect encapsulation of the compelling need under Rule 43 that the *In re 3M* court found. 2021 WL 2605957, at *4-5. Judge Shea's findings reinforce the point. He found that even a later opportunity for cross-examination did not eliminate the prejudice: "[t]hat the States had the opportunity to cross-examine the witnesses at their recent depositions does not wholly eliminate the inherent advantage for the Defendants that the timing of this maneuver provides." Shea Opinion at 9. He also noted, without dispute from Mylan, that at his November 2025 deposition Mr. Nesta "testified that he could not remember in response to over one hundred questions," and found that the plaintiffs there had "suffered the prejudice of the

[50] Appendix 1 at 1 (449:15 and 450:3).

witnesses' fading memories." *Id.* at 10. *In re 3M* found good cause on the same reasoning that "the nuances and details of [the witness's] testimony have evolved" and that the party would be prejudiced "if he does not have the opportunity to question [the witness] live before the jury." 2021 WL 2605957, at *4-5. And as the *Mullins* court observed, contemporaneous testimony "will promote coherency, especially when the alternative is spliced, edited, and recompiled clips of depositions that took place over multiple days." 2017 WL 532102, at *4. That concern is sharper here, where the video no longer matches the "corrected" transcript.[51] An errata sheet cannot be cross-examined, but Mr. Nesta can.

The remaining considerations point in the same direction. Control is the first *Vioxx* factor, 439 F. Supp. 2d at 643, and the record bearing on that factor has materially changed. The burden factor is also slight: Humana's alternative relief would not require Mr. Nesta to travel more than 100 miles from his residence. Mylan identifies no surprise or trial prejudice of the kind the factors contemplate. It has met with, prepared, and deposed Nesta on multiple occasions and knows what he will say. And the continuance of the September 15 trial date has removed any timing concern, leaving ample room for the trial subpoena the R&R preserved and for the safeguards Rule 43(a) contemplates.

**C. The R&R's Rule 43(a) and 45(c) analysis rests on legal error.**

**1. *Hightower* expressly declined to decide the Rule 43(a) question.**

In describing "the use of Rule 43(a) . . . as an 'end-run' around Rule 45(c)," the R&R states that "[t]he Third Circuit has reached a consistent result" and that *Hightower*'s "reasoning is directly applicable here." R&R at 8. But the "end-run" language quoted by the R&R from *Hightower* is wholly inapplicable, as it <u>only appears in the court's recitation of the appellant's own argument</u>. Indeed, the

[51] Mylan's authorities do not suggest otherwise. *Estate of Spear v. Commissioner* did not involve Rule 43(a); it assessed prejudice from a witness's absence in a sanctions posture, and turned on findings that the videotaped deposition there was "lucid and informative" and that "it is difficult to see how anything more would be forthcoming at a trial." 41 F.3d 103, 115-16 (3d Cir. 1994). Here, Humana can identify precisely what remains to be examined: Nesta's twenty-seven post-deposition changes and narrow questioning on his credibility as a witness. *In re Urethane Antitrust Litig.*, No. 2:08-5169, 2016 WL 723014 (D.N.J. Feb. 22, 2016), denied remote testimony of eight current employees on a materially different record, and did not address the features present here: a post-deposition change to the witness's own testimony and intervening judicial findings concerning the opposing party's influence over the witness. *Id.* at *1-2.

court held that it "need not address the merits of Lightman's argument regarding Rule 43"[52] and recognized that remote testimony under Rule 43(a) "is ultimately left to the discretion of the court."[53]

Humana has not yet issued a subpoena to Mr. Nesta and intentionally sought the Rule 43(a) order first.[54] Humana does not ask the Court to disregard Rule 45(c)(1)'s geographic limits, nor does it contend that Rule 43(a) enlarges them. Rule 43(a) governs the manner in which testimony is taken. Rule 45(c) governs the place at which a witness must comply. Humana asks that Mr. Nesta be commanded to appear at a place that satisfies Rule 45(c)(1), within 100 miles of his North Carolina residence, and to testify from there by contemporaneous transmission pursuant to Rule 43(a). That is the arrangement the Advisory Committee described when Rule 45 was amended in 2013: "[w]hen an order under Rule 43(a) authorizes testimony from a remote location, the witness can be commanded to testify from any place described in Rule 45(c)(1)." Fed. R. Civ. P. 45 Advisory Committee's Note to 2013 amendment.[55]

**2. The R&R ignores the Advisory Committee's Note to the 2013 amendment.**

The R&R's reliance on *Kirkland* is misplaced for three reasons:

*First*, the Advisory Committee's Note to the 2013 amendment expressly describes remote testimony from a Rule 45(c)(1)-compliant location as permissible after a Rule 43(a) order. At a minimum, the Note confirms that Humana's reading of the interaction between Rules 43(a) and 45(c) is a recognized one—but the R&R adopts *Kirkland*'s reading without engaging the Note at all.

*Second*, Rule 45(c) is expressly titled "Place of Compliance," and subsection (c)(1) defines the places to which a witness may be commanded to go. Where an order under Rule 43(a) authorizes testimony from a remote location, the place from which the witness must comply is that location, not the courthouse he never enters. *Kirkland*'s reading detaches the phrase from the conduct it governs.

---

[52] *Hightower,* 2024 WL 2794408, at *3-4 & n.21 (not precedential).
[53] *Id.* at *3 n.24 (emphasis added).
[54] Humana will promptly serve a trial subpoena on Mr. Nesta once a trial date is set or the Court so orders it.
[55] *See also Orbital Eng'g, Inc. v. Buchko*, No. 2:20-593, 2022 WL 170043, at *2 (W.D. Pa. Jan. 19, 2022) (upon showing of good cause, court "can consider and grant a request for a witness to appear from a different location"); *Walsh,* 2022 WL 1913340, at *2 (D. Mass. June 3, 2022) ("[t]he 100-mile limitation of Rule 45(c) restricts the place of compliance with the subpoena, not the location of the court from which the subpoena issues," reaching a retired out-of-state witness "for the purposes of commanding his presence by videoconference from his home, or from any location within 100 miles of his home.").

*Third*, under *Kirkland*, Mr. Nesta could be compelled to travel to a location near his home to be deposed, and that recording could be played to the jury—but he could not be compelled to travel the *identical distance* to answer questions live, where the jury can watch him and counsel can follow up on the answers he gives. The illogic of the *Kirkland* rule would guarantee this jury the less complete version of the same. Nothing in Rule 45(c)'s purpose requires that result.

*Kirkland* binds no court in this Circuit. The Third Circuit has not resolved the question, and the district courts are divided. Giving *Kirkland* dispositive weight, as the R&R does, improperly gives a single out-of-circuit decision the force of binding precedent on an open question.

### D. Humana preserves its request that Mr. Nesta appear in person.

Humana preserves its request that Mylan be compelled to bring Mr. Nesta in-person at trial.[56] Indeed, it would be inequitable if Mr. Nesta—a central witness to the *Humana I* bellwether and all other cases in the MDL—is not examined before the jury in the first bellwether trial this Court has ever conducted. Especially where, as here, the only version of Mr. Nesta that the jury sees is a recording that no longer matches the "corrected" transcript.

Alternatively, Humana requests that Mr. Nesta appear at a location within 100 miles of his own residence and to testify from there live by contemporaneous transmission.[57]

## V. CONCLUSION

Humana respectfully requests that the Court sustain these Objections, decline to adopt the R&R, and order Mylan to produce Mr. Nesta to testify in person at trial or, alternatively, authorize Mr. Nesta to testify remotely under Rule 43(a) from a location that complies with Rule 45(c)(1).

Dated: November 10, 2026

Respectfully submitted,

*/s/ Joseph Nielsen*
Peter D. St. Phillip
Joseph Nielsen
Uriel Rabinovitz
Raymond P. Girnys

*/s/ J. Caleigh Macdonald*
Todd M. Schneider
J. Caleigh Macdonald
**SCHNEIDER WALLACE COTTRELL KIM LLP**

---

[56] *See* Mot. at 7-8 (ECF 4961).

[57] Mr. Nesta testified that he resides in Davidson, North Carolina. Nesta Tr., July 21, 2026, (Nielsen Decl. Ex. 2, MDL ECF No. 4961-3) at 11:10-13; *see id.* at 21:1 ("North Carolina, where you currently reside").

Noelle Ruggiero
Alexis H. Castillo
Deborah Rogozinski
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel. (914) 997-0500
pstphillip@lowey.com
jnielsen@lowey.com
urabinovitz@lowey.com
rgirnys@lowey.com
nruggiero@lowey.com
acastillo@lowey.com
drogozinski@lowey.com

Matthew A. Cartwright
100 Front Street, Suite 520
West Conshohocken, PA 19428
mcartwright@lowey.com

*Counsel for Humana Inc.*

2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel.: 415-421-7100
tschneider@schneiderwallace.com
jmacdonald@schneiderwallace.com

Peter B. Schneider
3700 Buffalo Speedway, Suite 960
Houston, TX 77098
pschneider@schneiderwallace.com

Jason H. Kim
300 S. Grand Ave., Suite 2700
Los Angeles, CA 90071
jkim@schneiderwallace.com

David D. Burnett
1050 30th Street NW
Washington, DC 20007
dburnett@schneiderwallace.com

*Counsel for Humana Inc.*